2012 UT 62

**STATE of Utah, Petitioner and Appellee,**

v.

**Arvin V. MOORE, Respondent and Appellant.**

**No. 20100202.**

Supreme Court of Utah.

Sept. 28, 2012.

**488**

Mark L. Shurtleff, Att'y Gen., Karen A. Klucznik, Asst. Att'y Gen., Salt Lake City, for appellee.

Brent A. Gold, Park City, Andrew Parnes, Ketchum, ID, for appellant.

NEHRING, Associate Chief Justice:

¶ 1 Arvin Moore was convicted of aggravated sexual abuse of a child, a first-degree felony, and dealing in material harmful to a minor, a second-degree felony. He appealed his convictions to the court of appeals, asserting that he should be granted a new trial because his trial counsel was ineffective. Specifically, Mr. Moore contended that trial counsel did not properly investigate or exploit discrepancies in the victim's statements about whether the abuse occurred in 2002 or 2003. The court of appeals agreed and granted a new trial on both charges.[1] The State conceded that Mr. Moore's counsel acted ineffectively in defending the sexual abuse conviction, but petitioned for writ of certiorari on the harmful materials conviction. We affirm the court of appeals' conclusion that Mr. Moore is entitled to a new trial on the harmful materials conviction.

## BACKGROUND

¶ 2 The alleged victim, L.B., who was eighteen years old at the time of trial, alleged that Mr. Moore had shown him pornography and sexually assaulted him several years earlier.

¶ 3 In 2001, when L.B. was twelve, he began mowing lawns for Mr. Moore. The next two summers, 2002 and 2003, when L.B. was thirteen and fourteen, Mr. Moore invited him to work on his ranch in Summit County along with some other young men. In 2006, L.B. reported to his mother and then his ecclesiastical leader that Mr. Moore had sexually abused him and introduced him to pornography. During his initial interview with police, L.B. said four times that he was fourteen when Mr. Moore assaulted him. In a second, unrecorded, interview, he said that

---

1. *State v. Moore*, 2009 UT App 386, ¶ 12, 223     P.3d 1137.

the incident occurred when he was thirteen, not fourteen. The police searched Mr. Moore's house and found pornography that matched L.B.'s description.

¶4 Based on L.B.'s statement that the incident occurred when he was thirteen, the State charged Mr. Moore with one count of aggravated sexual abuse of a child, a first-degree felony that applies only when the victim is under the age of fourteen,[2] rather than forcible sexual abuse, a second-degree felony,[3] or sexual abuse of a minor, a class A misdemeanor,[4] either of which would apply if the victim were fourteen.[5] The State also charged Mr. Moore with one count of dealing in material harmful to a minor,[6] which applies when the victim is under the age of eighteen and makes no distinction between the ages of thirteen and fourteen.[7] Mr. Moore requested a bill of particulars, in which the State declared that the alleged offenses took place between July 1, 2002 and August 31, 2002.

¶5 At trial, L.B. testified that, prior to the abuse, Mr. Moore had frequently questioned L.B. about whether he had ever masturbated and encouraged him to do so. L.B. testified that Mr. Moore provided him with handwritten notes containing sexual instruction and information supposedly taken from a pornographic magazine entitled "The Red Book." He testified that one day, he ate lunch in the living room of the ranch house. Mr. Moore gave him a pornographic magazine, and told L.B. that he also had a pornographic video in his bedroom. Mr. Moore led L.B. into his bedroom, which was adjacent to the living room. Mr. Moore placed the open pornographic magazine on the bed and set up the video for viewing. Mr. Moore then left the room, and told L.B. that he could view the video and read the magazine while masturbating. L.B. testified that not long after he began watching the video and masturbating, the door to the bedroom "popped open," and Mr. Moore entered the room. After walking over to stand behind the chair in which L.B. was sitting, Mr. Moore asked L.B. if he could touch and rub L.B.'s penis. L.B. allowed Mr. Moore to do so, and Mr. Moore continued touching L.B. until he ejaculated.

¶6 During his testimony, L.B. drew a detailed picture of the ranch house. He explained that Mr. Moore's mother was living in the house during the summer, and she died later that summer. He said that she went to the hospital for a few days in July, but after she came home, she was in a hospital bed in the living room from the end of July until she died in August. He stated that she was still alive when the abuse occurred. He further explained that Mr. Moore's sisters were often in the house to take care of their mother. He also stated that he worked for Mr. Moore the following summer, in 2003.

¶7 Mr. Moore's defense was that the incident never happened. To substantiate this, he produced evidence akin to an alibi defense, attempting to prove that the incident could not have happened the way L.B. described. He called his three sisters, who testified that they were in the home almost the entire summer of 2002, tending to their dying mother. They testified that their mother was in a care facility for a few days in June, and another few days in July, but spent the rest of the summer at the ranch, until she passed away in early August. Their mother spent much of that time in a hospital bed in the living room. They testified that they occupied the bedroom adjacent to the living room, where L.B. claimed the abuse had occurred, and that this bedroom did not have a television in it. They testified that Mr. Moore's bedroom, which had a portable television and VCR in it, was in the basement of the ranch house. Mr. Moore's sisters also testified that the boys who were working on the ranch rarely, if ever, entered the ranch house, but that there was otherwise a steady stream of visitors coming and going. One of Mr. Moore's sisters testified that, for several months after their mother

2. UTAH CODE § 76–5–404.1(1), (5).

3. *Id.* § 76–5–404(2)(a).

4. *Id.* § 76–5–401.1(3).

5. *Id.* §§ 76–5–404(1), 76–5–401.1(1).

6. *Id.* § 76–10–1206.

7. *Id.* § 76–10–1201(8).

died, Mr. Moore left the furniture as it had been when their mother had been alive, but he moved his things upstairs in the spring of 2003.

¶ 8 The jury convicted Mr. Moore on both counts. Mr. Moore moved for a new trial, arguing, among other things, that his trial counsel had rendered ineffective assistance by not pressing the discrepancy in L.B.'s testimony about whether the incident occurred in 2002 or 2003. His argument was focused on the sexual abuse charge, which was necessarily linked in time to the harmful materials charge. In its ruling on Mr. Moore's motion for a new trial, the trial court determined that defense counsel's performance was deficient but not prejudicial. The trial court said:

> Defendant argued, supported by some evidence but rejected by the jury, that the conduct did not happen at all. In the face of that challenge, the jury believed [L.B.] that the touching did occur. This court believes that given the totality of the evidence, and specifically the nature of the impeachment and impeaching evidence by way of prior inconsistent statements of a youthful witness, the jury would have believed [L.B.] about WHEN, what Summer, the touching of genitals happened as well even if [L.B.] had been vigorously challenged on cross examination and even if the jury had been given an alternative offense on which to convict defendant.... Counsel's performance was deficient but had it not been the court concludes that defendant has not proven there is a reasonable probability of a different result.

¶ 9 After his motion for a new trial was denied, Mr. Moore appealed to the court of appeals. He raised five claims, including that defense counsel rendered ineffective assistance of counsel by failing to pursue L.B.'s inconsistent statements about whether he was thirteen or fourteen when the abuse occurred. Trial counsel did not consult with Mr. Moore about the inconsistencies, nor did he exploit the discrepancy at trial.[8] Given that the one-year discrepancy in L.B.'s account would mean the difference between a first-degree felony and a lesser offense, the State conceded that defense counsel's performance was deficient and prejudicial on the sexual abuse charge.[9] The State did not, however, make this same concession for the charge of distributing harmful materials to a minor.[10] The statute outlining that offense makes no distinction between the ages of thirteen and fourteen, and so the State argued that any error was not prejudicial: Mr. Moore could have been convicted of the same offense regardless of whether it occurred in 2002 or 2003.[11]

¶ 10 The court of appeals reversed both convictions and remanded for a new trial.[12] The court noted that "under the instructions presented to the jury, if there was a reasonable doubt as to whether the charged conduct occurred in 2002, the jury would have been obligated to acquit Moore."[13] The court concluded that "there is a reasonable probability that if Moore's trial counsel would have highlighted the inconsistencies regarding the age of the victim and, likewise, the summer when the charged conduct may actually have occurred, the jury would have had a reasonable doubt as to whether the conduct occurred in 2002."[14]

¶ 11 The State petitioned for writ of certiorari only on the court of appeals' reversal of Mr. Moore's harmful materials conviction. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(a). "On certiorari, we review the court of appeals' decision for correctness."[15]

## ANALYSIS

¶ 12 We have agreed to determine whether the court of appeals erred when it

8. *Moore*, 2009 UT App 386, ¶ 8, 223 P.3d 1137.

9. *Id.* ¶ 9.

10. *Id.*

11. *Id.*

12. *Id.* ¶ 12.

13. *Id.* ¶ 10.

14. *Id.*

15. *Harold Selman, Inc. v. Box Elder Cnty.*, 2011 UT 18, ¶ 15, 251 P.3d 804.

reversed Mr. Moore's conviction for distributing harmful materials to a minor. We hold that the court of appeals did not err. Although it is not before us on certiorari, an important element of our analysis is the State's decision to charge Mr. Moore with a first-degree felony of aggravated sexual abuse of a child. Whether a person may be lawfully convicted of this crime depends on the age of the alleged victim. If the victim is younger than fourteen years old, an offender is subject to conviction of a first-degree felony.[16] If, however, a victim is fourteen years old, an offender may be guilty of forcible sexual abuse, a second-degree felony,[17] or sexual abuse of a minor, a class A misdemeanor.[18] By contrast, the difference between age thirteen and age fourteen is irrelevant to the offense of dealing in harmful materials to a minor.[19] A second central feature of these alleged offenses is that both allegedly took place during one episode on one day. The offenses cannot be separated in time. If they occurred, they either both occurred in 2002, in which case Mr. Moore was properly charged, or they both occurred in 2003, in which case Mr. Moore should have been charged with a lesser offense. Thus, even though only the harmful materials charge is before us, it nevertheless matters a great deal whether the alleged offenses took place in 2002 or 2003.

¶ 13 The State acknowledges that Mr. Moore's counsel provided him prejudicially defective assistance in his effort to overcome the sexual abuse charge, and that issue is not before us. It insists, however, that the harmful materials conviction should survive. In order to show ineffective assistance of counsel, "a defendant must show, first, that his counsel rendered a deficient performance in some demonstrable manner, which performance fell below an objective standard of reasonable professional judgment and, second, that counsel's performance prejudiced the defendant."[20] The State concedes that counsel was deficient in not raising the time

discrepancy, and we have no reason to second-guess that conclusion. But the State argues that Mr. Moore was not prejudiced as to his harmful materials conviction because it could easily have preserved the conviction through the simple expedient of amending its information and jury instructions to eliminate reference to 2002 at all, or to include 2003 as a possible year when the offense took place.

¶ 14 While expansive in scope, the State's authority to amend an information is not unlimited. Rule 4 of the Utah Rules of Criminal Procedure allows the State to amend its information "before verdict if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced."[21] An amended information that expanded the dates of both alleged offenses to include 2003 would have necessarily transgressed rule 4's limitations because L.B. was fourteen years old in the summer of 2003, and therefore Mr. Moore could not have been exposed to a first-degree felony for his alleged conduct. And, given that the alleged offenses occurred in tandem, it is illogical to suppose that the State could have amended its information on the harmful materials charge alone, leaving the sexual abuse charge intact. Any such amendment would defy reason because it would suggest that the sexual abuse occurred in 2002, but the distribution of harmful materials—which occurred on the same day—could have occurred in either 2002 or in 2003. On the other hand, if the State moved to amend the information to allow the jury to convict for either both charges in 2002, or the harmful materials charge alone in 2003, and if the trial court granted the amendment, the State would effectively slough off the sexual abuse charge, sacrificing most of its case to retain a conviction on the lesser offense. In any event, we do not agree that the problem would have easily been remedied by a mere amendment of the information. Any amend-

16. Utah Code § 76-5-404.1(1), (5).

17. Id. § 76-5-404(1), (2)(a).

18. Id. § 76-5-401.1(3).

19. Id. §§ 76-10-1206(1), 76-10-1201(8).

20. Archuleta v. Galetka, 2011 UT 73, ¶ 38, 267 P.3d 232 (internal quotation marks omitted).

21. Utah R.Crim. P. 4(d).

ment would have significantly altered the progression of the case.

¶ 15 The State makes much of the fact that the jury convicted Mr. Moore even in the face of his alibi-like evidence. The State contends that the jury obviously believed L.B.'s account, and would presumably have continued to believe him even if the charge was amended to include 2003. The State therefore invites us to uphold the jury's conviction, asking us to infer that the jury would have convicted Mr. Moore regardless of the year charged.

¶ 16 Even if we view the harmful materials conviction in complete isolation from the sexual abuse charge, as if the sexual abuse charge never existed, we would not be persuaded. The State's argument strays from and distorts the requirements of demonstrating that counsel's assistance was ineffective, which was the issue originally presented to the court of appeals.

¶ 17 The State's argument suggests that, in order to demonstrate prejudice, Mr. Moore was obligated to show what defense he would have offered if the charges had been amended to include 2003 and to show that such a defense would have succeeded. This stretches the ineffective assistance of counsel test too far. "[A] defendant need not show that counsel's deficient conduct *more likely than not* altered the outcome in the case." [22] Instead, the only requirement is that "[t]he defendant must show that there is *a reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [23] Thus, the standard is simply whether there was a reasonable probability, which is "a probability sufficient to undermine confidence in the outcome." [24] We bear in mind that the purpose of ensuring that counsel's assistance is effective is to provide the defendant with his constitutional right to a fair trial. "The Sixth Amendment recognizes the right to the assistance of counsel because it

envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." [25] "An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." [26]

¶ 18 Although we require Mr. Moore to show prejudice, we do not require him to show us what his defense would have been if the State had amended its information, nor is he required to prove that the defense was viable. If it were otherwise, we would be required to conduct a mini-trial on appeal to determine whether the defendant's alternative defense was reasonably likely to succeed; a slam-dunk defense would be easy to assess, but a more complicated one would require fuller development. When the edges of a defense are less clearly defined, it is difficult for us to review it for the first time on appeal. Mr. Moore might have used the discrepancy to challenge the credibility of the victim and rest on the theory that the incident never occurred. He might have used the discrepancy to argue that the abuse occurred in 2003, hoping to avoid a conviction on the more serious offense. He might have raised a defense to the assertion that the incident happened in 2003. It is impossible for us to know and we are not the appropriate body before which Mr. Moore should mount his defense.

¶ 19 Instead, we agree with the court of appeals that, had defense counsel exploited the issue of the time discrepancy, there is at least a reasonable probability that the jury would have doubted whether the abuse occurred in 2002. In view of the fact that the State was prohibited by rule 4 from amending the information for both counts, the jury could not have convicted Mr. Moore of aggravated sexual abuse of a child if it thought the abuse happened in 2003. Nor could it have convicted Mr. Moore of distributing harmful materials to a minor in 2003 while simultaneously convicting him of sexually abusing a child in 2002. Even if—and we have no

**22.** *Strickland v. Washington,* 466 U.S. 668, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (emphasis added).

**23.** *Id.* at 694, 104 S.Ct. 2052 (emphasis added).

**24.** *Id.*

**25.** *Id.* at 685, 104 S.Ct. 2052.

**26.** *Id.*

reason to assume it would have done so—the State had amended the information to allow the jury to convict on the harmful materials charge only in 2003, abandoning its sexual abuse charge, and Mr. Moore had been given an opportunity to defend against this claim, we can only speculate as to what would have happened next. Depending on which of many paths was chosen, there were several possible outcomes, some of which may have resulted in conviction, and some of which may have resulted in acquittal. The question for us is whether there was at least a reasonable probability of a different result. We conclude there was.

¶ 20 The State's supporting arguments do not convince us otherwise. First, the State suggests that the court of appeals' decision erroneously made time an element of the offense. But in order to support its felony charge, the State was required to prove that Mr. Moore sexually abused L.B. while L.B. was younger than fourteen. The State could not do so without proving the date of the harmful materials distribution. Thus, while proof of the date of the harmful materials charge did not make time an element of the offense, it was an inevitable byproduct of the State's felony case. Second, the State argues that the court of appeals "erred in holding that the law of variances [27] would have precluded the State from amending the information in this case." The State cites a footnote in the court of appeals' opinion stating that the court "d[id] not see that a variance of a year [wa]s permissible under the facts of this case." [28] The State argues that the law of variances only applies when the State presents evidence outside the alleged time frame, and, here, it would have been the defense, not the prosecution, who raised that evidence. Alternatively, the State argues that, even if the law of variances did apply, Mr. Moore was not prejudiced by the variance because he clearly had notice of it and could prepare a defense. But, like a potential amendment of information, a variance in this case cannot be viewed in isolation. Logic prohibited the jury from assuming that L.B. was mistaken about the year that the harmful materials offense occurred but correct about the year that the sexual abuse occurred. Law prohibited the jury from determining that L.B. was simply mistaken about the year, assuming that the offense had taken place in 2003, but nevertheless convicting Mr. Moore of the first-degree felony of aggravated sexual abuse of a child under the age of fourteen. We therefore conclude a variance would not have salvaged the State's case.

¶ 21 Ultimately, it is unclear what would have happened if trial counsel had pressed the discrepancy in L.B.'s interviews. It is unclear how the jury would have viewed this information, it is unclear how the State would have responded, and it is unclear how Mr. Moore might have defended against any modifications the State might have made. And we decline to uphold a conviction based on such speculation because it cuts against the Sixth Amendment's right to a fair trial. Instead, we agree with the court of appeals that Mr. Moore has shown that there is a reasonable probability that the result of the proceeding would have been different.

---

**27.** A "variance" is "[a] difference or disparity between two statements or documents that ought to agree; esp., in criminal procedure, a difference between the allegations in a charging instrument and the proof actually introduced at trial." BLACK'S LAW DICTIONARY 1692 (9th ed. 2009).

By definition, the right to constitutionally adequate notice requires that the information given by the prosecution must be such that the defendant can confidently rely on it in preparing for trial. Therefore, an essential corollary of the defendant's right to obtain information on the alleged offense from the prosecution is some rule or doctrine which assures that the information given is reliable. The variance doctrine can fulfill this function by prohibiting

the prosecution from introducing at trial evidence that varies from the information previously given, if that variance would prejudice a defendant's case and if the defendant has not been allowed sufficient time before trial (by means of a continuance if necessary) to prepare to meet the prosecution's changed position.

*State v. Fulton,* 742 P.2d 1208, 1215 (Utah 1987). Thus, "whenever the prosecution changes its position, a defendant may seek a continuance. If the trial court finds the variance to be prejudicial, it must grant a continuance as a matter of right." *Id.*

**28.** *State v. Moore,* 2009 UT App 386, ¶ 10 n. 3, 223 P.3d 1137.

## CONCLUSION

¶ 22 Trial counsel's failure to press the time discrepancy undermines our confidence in the outcome in this verdict and we conclude that, had counsel raised the issue, there is at least a reasonable probability that the jury might have concluded that the abuse did not occur in 2002 and would therefore have been obligated to acquit. We are not persuaded by the State's arguments that the court of appeals improperly made time an element of the offense or improperly applied the law of variances. We therefore affirm the court of appeals' conclusion that trial counsel's deficient performance was prejudicial. We remand to the trial court for a new trial or such other proceedings as may be appropriate.

Associate Chief Justice NEHRING authored the opinion of the Court, in which Chief Justice DURRANT, Justice DURHAM, and Justice PARRISH joined.

Justice LEE filed a dissenting opinion.

Justice LEE, dissenting:

¶ 23 I can appreciate the court's misgivings regarding the verdict in this case, given that trial counsel failed to address the victim's equivocation about the crucial issue of his age at the time of the events in question. As the State properly concedes, defense counsel should have consulted with his client about that issue, and his failure to do so amounts to deficient performance under step one of the ineffective assistance of counsel standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

¶ 24 That concession, however, does not in my view sustain the court's decision to remand for a new trial on the harmful materials charge (which is the only charge before us on certiorari). I respectfully dissent because I find no basis in the record to sustain the court's conclusion that the defendant established the second prong of his *Strickland* claim—a reasonable probability that the trial would have turned out differently if counsel had performed reasonably.

¶ 25 First, Moore has not established that his lawyer's failure to consult with him on the timing issue would have altered his trial strategy. As the majority indicates, the defense Moore presented at trial was alibi-like. *Supra* ¶ 15. It sought to undermine the victim's description of the crimes through the testimony of Moore's sisters, who testified that in 2002 they were consistently in the home caring for their dying mother and never saw Moore or any other young boys come into the house, and also that at that time there was no TV in the bedroom where the sexual assault was allegedly committed. This defense allowed Moore to advance his position that the acts in question never took place, and to do so without ever taking the witness stand.

¶ 26 If trial counsel had discussed with Moore the discrepancy in the victim's statements on timing, they would have faced a dilemma. On one hand, the discrepancy might have opened the door for trial counsel to argue that the events in question may have happened—if at all—in 2003, after the victim had turned fourteen and when Moore thus could not be found guilty of aggravated child sex abuse (but only of dealing in harmful materials). And if they had chosen that approach, they might have decreased the odds of a conviction on the aggravated child sex abuse charge. Yet that approach would not have been inevitably preferable to the one counsel ultimately chose. After all, by 2003 Moore's mother had passed away and his sisters were no longer living in the home, so they could not have offered any "alibi" on his behalf. Hence the dilemma: If defense counsel had focused on the victim's earlier statement that the events in question took place in 2003, he would have undermined his "alibi" defense, as his "alibi" witnesses were not in the home in 2003 and could not have testified on his behalf.

¶ 27 Thus, a decision to highlight the 2003 date previously identified by the victim could have opened the door for Moore to challenge one of the counts against him, but it also could have closed the door to his "alibi" defense to the whole encounter. Moreover, if counsel had highlighted the 2003 date, that likely would have provoked the prosecution to move to amend the information and jury instructions "to include 2003 as a possible

year when the offense took place." *Supra* ¶ 13.[1] This amendment surely would have left the 2002 charge in place as to both the aggravated child sex abuse charge and the harmful materials charge, while simply adding an alternative charge for 2003 that included only a harmful materials charge.[2]

¶ 28 And if we assume (as we must) reasonableness on the part of the prosecution, we should also conclude that a reasonable motion to amend would have been granted by the district court. Rule 4 certainly does not suggest otherwise. It leaves ample discretion for the district court to determine whether and to what extent an amendment would prejudice the "substantial rights of the defendant," [3] and to remedy such prejudice with a continuance if it appears that the defendant would need additional time to prepare a defense to the amended charge.[4] If Moore had questioned the victim's credibility by noting his equivocation over whether the conduct took place in 2002 or 2003, that likely would have provoked the prosecution to move to amend the information to include a harmful materials charge as to 2003. And in that

event, it seems highly likely that the prosecution's motion would have been granted pending, perhaps, a continuance to allow the defense to prepare to defend against that charge.

¶ 29 In defending the contrary view, the majority insists that *Strickland* "do[es] not require [Moore] to show us what his defense would have been if the State had amended its information" or "to prove that the defense was viable." *Supra* ¶ 18. I cannot see how that can be true, unless we are eliminating the defendant's longstanding burden under *Strickland* of establishing not just deficient performance of counsel but also prejudice to the outcome at trial.[5] Granted, the defendant's burden does not rise to the level of establishing " 'that counsel's deficient conduct *more likely than not* altered the outcome in the case.' " *Supra* ¶ 17 (quoting *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052) (emphasis added). But that does not mean that there is no burden at all. The defendant's burden of establishing prejudice under *Strickland* is well-ingrained in U.S. Supreme Court precedent and in the parallel prece-

1. I see no basis for the court's suggestion that such an amendment would have forced the State to "sacrific[e] most of its case to retain a conviction on the lesser offense." *See supra* ¶ 14. The amendment would simply have presented the jury with two alternatives—one where the events took place in 2002 (exposing Moore to conviction on both counts) and one where they happened in 2003 (limiting his exposure to the harmful materials charge). This is not sacrificing the greater offense. It is offering a fallback of the lesser offense in the event the jury accepted the 2003 date. That seems neither unlikely nor troubling.

2. The court rejects the prospect of a "variance" at trial, asserting that "[l]ogic prohibited the jury from assuming that L.B. was mistaken about the year that the harmful materials offense occurred but correct about the year that the sexual abuse occurred" and that "[l]aw prohibited the jury from ... assuming that the offense had taken place in 2003, but nevertheless convicting Mr. Moore of the first-degree felony of aggravated sexual abuse of a child under the age of fourteen." *Supra* ¶ 20. I disagree. If there had been a variance, it would not have been to allow the jury to convict Moore on both counts for conduct taking place in 2003, but to allow it to convict him either on both counts for conduct in 2002 or on just the harmful materials charge for conduct in 2003.

3. Utah R.Crim. P. 4(d).

4. *See State v. Taylor,* 2005 UT 40, ¶ 8, 116 P.3d 360 ("A trial court's decision to grant a continuance is a matter of discretion, and we review the decision for abuse of that discretion. An abuse of discretion occurs when a trial court denies a continuance and the resulting prejudice affects the substantial rights of the defendant ...." (citation omitted)); *see also id.* ¶ 9 ("The right to adequate notice in the Utah Constitution requires the prosecution to state the charge with sufficient specificity to protect the defendant from multiple prosecutions for the same crime and to give notice sufficient for the one charged to prepare a defense." (internal quotation marks omitted)).

5. *See State v. Tyler,* 850 P.2d 1250, 1259 (Utah 1993) ("[A] defendant claiming ineffective assistance of counsel has the difficult burden of showing actual unreasonable representation *and* actual prejudice." (emphases omitted)); *see also State v. Munguia,* 2011 UT 5, ¶ 30, 253 P.3d 1082 ("To show prejudice in the ineffective assistance of counsel context, the defendant bears the burden of proving that counsel's errors actually had an adverse effect on the defense and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (internal quotation marks omitted)).

dent of this court,[6] and it is a heavy burden.[7] "[M]ini-trial[s] on appeal" and difficulties evaluating "less clearly defined" defenses are the natural result of that burden, not a justification for releasing defendants from it.[8] *See supra* ¶ 18. And unless we are somehow jettisoning that burden today, we can hardly award Moore a new trial without *some proof* from him as to how his case would probably have proceeded but for trial counsel's deficient performance. The absence of such proof from Moore is yet another ground for rejecting his ineffective assistance claim under *Strickland.*

¶ 30 It is no answer to insist that "[i]t is impossible for us to know" or that "it is unclear what would have happened if trial counsel had pressed the discrepancy in L.B.'s interviews" or "how the jury would have viewed this information" or "how [Moore] might have defended against any modifications the State might have made." *See supra* ¶¶ 18, 21. If "we can only speculate as to what would have happened next" as the court suggests, *supra* ¶ 19, that is due to Moore's failure to carry his burden on these matters. True, there were "many paths" Moore could have chosen, "some of which may have resulted in conviction, and some of which may have resulted in acquittal." *Supra* ¶ 19. But he failed to prove, with a

reasonable probability, that he would have chosen the path to acquittal. And such failure is hardly a basis for "declin[ing] to uphold [Moore's] conviction." *See supra* ¶ 21. It is Moore who carries the burden of establishing prejudice under *Strickland,* and the matters of "speculation" cited by the court are essential elements of a showing of prejudice. Moore's failure to carry that burden must cut the other way, and cannot possibly sustain that court's conclusion that he "has shown that there is a reasonable probability that the result of the proceeding would have been different" absent counsel's deficiency. *See supra* ¶ 21.

¶ 31 Ultimately, Moore's counsel's decision to ignore the timing discrepancy in the victim's description of the events in question was a "shoot the moon" strategy—one that pressed for a complete victory in the form of an acquittal on all counts (under the "alibi" defense) while sacrificing a chance for a partial victory in the form of a child sex abuse acquittal with a harmful materials conviction. We may question that strategy in hindsight, particularly given that it failed. But our cases routinely endorse such strategies as within the broad range of reasonable decisions counsel may make under *Strickland.*[9] We should likewise decline to second-guess

---

**6.** *See Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) ("In order to establish ineffective representation, the defendant must prove both incompetence and prejudice.... The defendant shows that he was prejudiced by his attorney's ineffectiveness by demonstrating that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (internal quotation marks omitted)); *Munguia,* 2011 UT 5, ¶ 30, 253 P.3d 1082; *Tyler,* 850 P.2d at 1259.

**7.** As the United States Supreme Court recently clarified, the defense burden on step two of *Strickland* is significant: The standard "does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter,* ––– U.S. ––––, 131 S.Ct. 770, 792, 178 L.Ed.2d 624 (2011) (citations and internal quotation marks omitted).

**8.** The burden of proof *Strickland* imposes on defendants creates a corresponding obligation

for this court to evaluate whether defendants have met that burden. Therefore, I cannot agree that "we are not the appropriate body before which [Moore] should mount his defense." *See supra* ¶ 18. Though it may be "difficult for us to review [defenses] for the first time on appeal," *supra* ¶ 18, that is what *Strickland* requires.

**9.** *See, e.g., State v. Dyer,* 671 P.2d 142, 145 (Utah 1983) (recognizing the use of an "all or nothing" defense); *State v. Valdez,* 19 Utah 2d 426, 432 P.2d 53, 54 (1967) (noting that when a defendant chooses "as a matter of trial strategy ... to have his case submitted to the jury upon the basis of the greater offense only and to risk 'all or nothing' on the outcome," he is bound by his decision); *State v. Kaaloa,* 2006 UT App 501U, para. 7, 2006 WL 3648030 (holding that "where[ ] counsel attempts to secure an acquittal by precluding the jury from reaching a compromise verdict of guilt on [a] lesser offense .... [s]uch a strategy does not constitute ineffective assistance of a counsel."); *State v. Parkin,* 742 P.2d 715, 716 (Utah Ct.App.1987) (acknowledging the use of "all or nothing" defense).

counsel's judgment here or lightly assume that a change in trial strategy would have changed the outcome of the trial.[10]

¶ 32 Moore's counsel reasonably decided not to open the door to 2003 in order to ensure that the jury had no compromise option before it. If Moore's counsel had highlighted the time discrepancy in the victim's prior statements, the compromise option could have been placed on the table by a prosecution motion to amend or vary the charges against Moore. Since that move would have been risky, I see no reason to assume that Moore's trial strategy would have changed or that the outcome of trial would have been different if his counsel had discussed with him the time discrepancy in the victim's prior statements. And for that reason I would reject Moore's *Strickland* argument and affirm his conviction on the harmful materials charge.

---

**10.** *See Harrington,* 131 S.Ct. at 788 ("Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. *It is all too tempting to second-guess* counsel's assistance after conviction or adverse sentence." (emphasis added) (internal quotation marks omitted)); *State v. Templin,* 805 P.2d 182, 186 (Utah 1990) ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (internal quotation marks omitted)).