*This opinion is subject to revision before final publication in the Pacific Reporter*

**2016 UT 3**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Respondent*,

*v.*

ROLAND MCNEIL,
*Petitioner.*

No. 20130664
Filed January 6, 2016

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Mark S. Kouris
No. 081400390

Attorneys:
Sean D. Reyes, Att'y Gen., Marian Decker, Asst. Att'y Gen.,
Salt Lake City, for respondent
Joan C. Watt, E. Rich Hawkes, Christine Seaman,
Salt Lake City, for petitioner

JUSTICE DURHAM authored the opinion of this Court,
in which CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
and JUSTICE HIMONAS joined.

ASSOCIATE CHIEF JUSTICE LEE filed a concurrence.

JUSTICE PARRISH sat for oral argument. Due to her resignation from
this court, however, she did not participate herein.

JUSTICE JOHN A. PEARCE became a member of the Court on
December 17, 2015, after oral argument in this matter, and
accordingly did not participate.

JUSTICE DURHAM, opinion of the Court:

### INTRODUCTION

¶1    Petitioner Roland McNeil was convicted of assaulting his co-worker. Mr. McNeil did not commit the actual assault—his son Quentin did—but Mr. McNeil was charged as an accomplice

because phone records showed that calls were made between his phone and his son's phone just before and after the assault.

¶2    At trial, the State relied on the phone records to prove Mr. McNeil's involvement. But the State did not introduce the phone records directly into evidence; instead, it sought to introduce preliminary hearing testimony about the records from a detective who had died before trial. The defense objected, arguing that the detective's testimony about the records was hearsay. The trial court expressed disagreement, and defense counsel apparently acquiesced, saying "Okay, it's not hearsay," before renewing the objection on other grounds. The testimony was ultimately admitted, and the State relied on it heavily, presenting little other evidence that the telephone calls occurred.

¶3    Ultimately, Mr. McNeil was convicted and decided to appeal. Before the court of appeals, he argued again that the testimony was hearsay—though on a different basis from the one he argued below—and argued further that his lawyer's objection on this point had been so inadequate as to violate Mr. McNeil's right to the effective assistance of counsel. *State v. McNeil*, 2013 UT App 134, ¶¶ 17, 25, 302 P.3d 844. The court of appeals rejected these arguments, concluding that (1) Mr. McNeil's counsel invited the error in admitting the detective's testimony and (2) any ineffective assistance by defense counsel in objecting to the admittance of the detective's testimony was not prejudicial. *Id.* ¶¶ 23–24, 32. Mr. McNeil, on certiorari, asks us to reverse.

## BACKGROUND

¶4    Mr. McNeil worked at Kennecott Mines in 2006 and 2007. He became friends with a co-worker and they began carpooling to work together, but the arrangement did not last. One day the two had a furious argument at work, leaving Mr. McNeil so upset that he pounded the dashboard for the entire forty-minute ride home. They never spoke again. Mr. McNeil told his son Quentin about his conflict at work with his co-worker. He also shared with Quentin a tape recording of his co-worker and other individuals threatening Mr. McNeil. They threatened to cut off Mr. McNeil's fingers and throw him in a ditch. After hearing the tape, Quentin became enraged and began stalking his father's co-worker. Quentin learned where he lived, what car and motorcycle he drove, where his daughter worked, his opinion of his future son-in-law, and that he did not trust banks and kept his savings at home.

¶5 Quentin eventually decided to confront his father's co-worker. One morning, he drove to his apartment complex and waited for him to return from breakfast. When he arrived home, Quentin asked him for a cigarette and a telephone while following him to his apartment. The co-worker declined Quentin's requests and began to open the door to his apartment. As he was opening the door, Quentin shoved him to the ground inside his apartment. Quentin closed the door and began attacking him.

¶6 During the attack, Quentin used the information he had gathered about his father's co-worker both to scare him and to attempt to locate cash. Quentin was not able to locate any cash, but he stole jewelry and broke his victim's nose and eight teeth. Before leaving, Quentin threw him in his bathtub, saying, "big daddy is going to let you live."

¶7 When the police investigated the assault, they found security footage showing that Quentin was talking on his mobile phone as he entered the complex. The police then obtained phone records that showed six telephone calls between Quentin and his father on the morning of the attack. The police observed that these calls included a fourteen-minute call that overlapped with the time that Quentin entered the complex, and a thirty-five second telephone call shortly after the attack. Based largely on this evidence, Mr. McNeil was arrested and charged with aggravated assault.

¶8 At Mr. McNeil's preliminary hearing, the State called a police detective who testified in detail regarding the times and length of the six telephone calls that morning, relying on notes in his case file based on his review of the phone records. At trial, the State asked to read in the detective's preliminary hearing testimony because the detective had died since the preliminary hearing.

¶9 Before the detective's preliminary hearing testimony was read to the jury, Mr. McNeil argued that the portion of the testimony that related to the telephone calls should not be read. He articulated through counsel a number of arguments for his position. Defense counsel first argued against reading the testimony regarding the telephone calls because he could not cross-examine the witness. Counsel then claimed that the telephone records were "neutral statements" but that these "neutral statements" may not be used when they lead to inappropriate inferences.

¶10  When counsel's arguments were not immediately accepted, counsel expanded the argument, saying that "[t]his is hearsay at this point, this is hearsay. It's a prior recorded statement from a witness who is unavailable." The trial court then interjected, saying "Hold the phone here. Hearsay says an out-of-court statement. This was in Court." In response, counsel said, "Okay, it's not hearsay[;] it's a neutral statement. I said it right the first time. I did. I said it right the first time." The trial court then made its ruling:

> This is not hearsay. It's a sworn statement under oath recorded, subject to cross[-]examination. If the statement did contain hearsay, we obviously would redact that. Both sides at this time are stipulating that in fact it doesn't. [Defense counsel] is objecting on different terms than hearsay terms; therefore, we will say [the parties are] stipulating to the fact that it's not hearsay. So that being said, it's going to come in.

Based on this ruling, the testimony regarding the phone calls was read to the jury.

¶11  After the prosecution rested, Mr. McNeil's counsel attempted to exclude the same portion of the detective's testimony by arguing that the testimony lacked the required foundation. The trial court rejected counsel's argument as untimely, ruling for the State without hearing the State's response to the argument.

¶12  Mr. McNeil was convicted, and he appealed to the court of appeals. He claimed that the trial court erred in failing to exclude the detective's testimony regarding the phone records. *State v. McNeil*, 2013 UT App 134, ¶¶ 18–32, 302 P.3d 844. He argued that the error constituted "plain error," that is, an error that can be addressed on appeal regardless of whether it was preserved. *Id.* ¶ 24.  He also argued that his counsel was ineffective in not pursuing the hearsay objection, and that the trial's outcome may have been different but for counsel's ineffectiveness. *Id.* ¶ 25.

¶13  The court of appeals held that the plain error claim failed because Utah courts do not review plain error claims when counsel "invites" the error below. The court concluded that defense counsel invited the error because the claim of hearsay was made and then withdrawn. *Id.* ¶ 23. The court further ruled that, even if defense counsel was ineffective in not pursuing the

hearsay objection, Mr. McNeil did not demonstrate that this lack of an objection was prejudicial. *Id.* ¶¶ 25–32. The court affirmed his conviction. *Id.* ¶ 72.

## STANDARD OF REVIEW

¶14   The doctrines we are asked to address here—invited error, plain error, and ineffective assistance of counsel—pertain only to claims that are raised after the initial trial. *See State v. Winfield*, 2006 UT 4, ¶ 14, 128 P.3d 1171; *State v. Cram*, 2002 UT 37, ¶ 4, 46 P.3d 230. These doctrines were raised for the first time in the court of appeals. We are thus reviewing how the court of appeals applied these doctrines. In doing so, we review the court of appeals' decision for correctness. *State v. Levin*, 2006 UT 50, ¶ 15, 144 P.3d 1096. This standard of review allows us to apply the doctrines at issue here as if we were the first appellate court to consider them.

## ANALYSIS

¶15   We granted certiorari on two issues, and we consider them in order. First, we address whether any error in admitting the detective's testimony was invited, concluding it was not invited because there was no clear affirmative statement by counsel inviting the court to err. Second, we address whether the alleged error was prejudicial, and we conclude that even if the trial court erred, the error did not prejudice Mr. McNeil.

## I. THERE IS NO INVITED ERROR

¶16   Mr. McNeil claims that the trial court plainly erred in not excluding the testimony regarding the content of the phone records as hearsay testimony. Before we address his plain error claim, we first review the State's argument that any error here was invited and thus not reviewable.

¶17   Under the doctrine of invited error, an error is invited when counsel encourages the trial court to make an erroneous ruling. The rule discourages "parties from intentionally misleading the trial court so as to preserve a hidden ground for reversal on appeal" and gives "the trial court the first opportunity to address the claim of error." *State v. Geukgeuzian*, 2004 UT 16, ¶ 12, 86 P.3d 742 (internal quotation marks omitted).

¶18   In examining whether counsel invited error, we have traditionally found invited error when the context reveals that counsel independently made a clear affirmative representation of the erroneous principle. *See, e.g., State v. Hamilton*, 2003 UT 22, ¶ 54, 70 P.3d 111 (holding that invited error exists when counsel

"either by statement or act, affirmatively represent[s] to the court" an incorrect statement of law). When we invoke this doctrine, we encourage counsel not to lead the trial court "into committing the error." *Id.* (citation omitted); *see also State v. Lucero,* 220 P.3d 249, 256 (Ariz. Ct. App. 2009) (noting a distinction between affirmative actions to "initiate the error" and merely acquiescing to the error).

¶19 We have held, however, that if the trial court—not counsel—is responsible for leading a courtroom discussion into error, any resulting error is not invited.[1] In *State v. Richardson,* defense counsel sought to admit testimony both as affirmative evidence and to rebut any contradictory evidence that the State might choose to put on. 2013 UT 50, ¶ 15, 308 P.3d 526. After discussion, the trial court allowed the defendant to use the desired evidence only for the purpose of rebutting any contradictory evidence. *Id.* ¶ 17.

¶20 The defendant was convicted and appealed, arguing before us that the testimony was categorically admissible. *Id.* ¶ 18.

---

[1] In *State v. Medina,* a jury indicated that it could not come to a unanimous verdict. 738 P.2d 1021, 1022 (Utah 1987). The trial judge drafted a modified *Allen* charge and asked both the prosecution and defense counsel whether they had any objections to giving the additional instruction to the jury. *Id.* Defense counsel read the instruction and stated that she had no objection. *Id.* The defendant was convicted and he challenged the *Allen* instruction on appeal. *Id.* at 1022–23. In determining whether to review the instruction, this court interpreted the equivalent of the current rule 19(e) of the Utah Rules of Criminal Procedure, which states that "[u]nless a party objects to an instruction or the failure to give an instruction, the instruction may not be assigned as error except to avoid a manifest injustice." We held that the manifest injustice exception to rule 19(e) may not be applied where defense counsel "actively represented to the court that she had read the instruction and had no objection to it." *Id.* at 1023.

Although *Medina* never applied or mentioned the invited error doctrine, we have suggested in subsequent cases that the invited error doctrine is relevant to the application of the manifest injustice exception to rule 19(e). *See State v. Anderson,* 929 P.2d 1107, 1109 (Utah 1996); *State v. Bullock,* 791 P.2d 155, 158–59 (Utah 1989). To the extent that *Medina* suggests that acquiescence to an alleged error initiated by the trial court bars appellate review, we repudiate it.

In response, the State erroneously argued that the defendant "sought only a ruling that would allow him to present the evidence on cross-examination if prior testimony had rendered it relevant." *Id.* ¶ 35 (internal quotation marks omitted). We disagreed with the State because the defendant originally made the broader argument, and only later focused on the narrow argument. *Id.* ¶¶ 37–38. We concluded that the State was incorrect in classifying counsel's choice as invited error because the defendant did not "paint himself into his current corner." *Id.* ¶ 39.

¶21 In this case, the State argues for a definition of invited error much broader than that in our caselaw. The State claims that the invited error doctrine is triggered by the fact that defense counsel "did not dispute" that the statement was not hearsay. The State also terms counsel's conduct as an "affirmative acquiescence." The State argues that if counsel does not offer a proper objection when asked to do so by the trial court, the error is invited. The State's argument is unpersuasive because an error of this sort by the trial court is not invited but merely unpreserved, and thus remains subject to plain error review. *See* 3B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 856 (4th ed. 2013) (noting that plain error "is [ordinarily] invoked by counsel who, in preparing an appeal, discover what they consider to be an error to which no objection was taken below"). Because the State's understanding of invited error would erode the doctrine of plain error review and is contrary to our present caselaw, we reject this broad definition of invited error.[2]

¶22 The State also offers a narrower argument, based on the fact that after the trial court stated that the evidence was not hearsay, defense counsel said, "Okay, it's not hearsay." The State

---

[2] We acknowledge that we have not always been consistent in this distinction between invited error and plain error. In *State v. Gleason*, for example, we somewhat cryptically stated that an "eleventh hour request [for a jury instruction] should be canvassed in an atmosphere of invited error." 405 P.2d 793, 795 (Utah 1965). And in *State v. Stone*, we held that if a defendant "fails to preserve the record" by making an evidentiary objection, "it is obvious that one easily could invite error by silence." 422 P.2d 194, 195 (Utah 1967). To the extent that these cases contradict our holding that counsel does not invite error through mere silence, we overrule them.

argues this constitutes invited error. But the context of counsel's arguments reveals otherwise. Defense counsel sought to exclude the detective's testimony about the phone records on a number of different grounds: (1) the lack of an ability to cross-examine the detective at trial, (2) the argument that neutral statements could be prejudicial to Mr. McNeil, and (3) hearsay. Counsel did not state that the records were not hearsay until the trial court insisted that the detective's testimony was not hearsay. Until the trial court's statement, counsel argued exactly the opposite.

¶23   As in *Richardson*, Mr. McNeil "did not paint himself into his current corner. The trial court did that by its interpretation of our rules of [evidence]. That interpretation . . . was not invited by [Mr. McNeil]." *Richardson*, 2013 UT 50, ¶ 39. We reject the State's arguments and hold that Mr. McNeil did not invite the alleged error in this case because his counsel withdrew the hearsay argument due to actions of the trial court, and because counsel's failure to object to a trial court's actions is not invited error in this context.

## II. MR. MCNEIL WAS NOT PREJUDICED BY THE ADMISSION OF THE DETECTIVE'S TESTIMONY

¶24   As noted above, Mr. McNeil argues that the trial court erred by failing to exclude the detective's testimony about the telephone records. Because Mr. McNeil did not preserve his objection to this error, we may review it only if it falls under one of the exceptions to the preservation rule. *See State v. Low*, 2008 UT 58, ¶ 19, 192 P.3d 867. Two such exceptions are at issue here: plain error and ineffective assistance of counsel.

¶25 Proving plain error or ineffective assistance requires proving that any errors by the trial court (under plain error review) or counsel (under an ineffective assistance of counsel claim) prejudiced the defendant.[3] Because both claims require a showing of prejudice, if we conclude that the errors alleged by Mr. McNeil were not prejudicial, Mr. McNeil's claims of ineffective assistance of counsel and plain error fail.

---

[3] The prejudice inquiry is sometimes referred to as a harmfulness inquiry. *State v. Holgate*, 2000 UT 74, ¶ 13, 10 P.3d 346 (listing elements of plain error review as "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful" (alteration in original) (citation omitted)).

¶26 We first explain the standard for prejudice review under plain error and ineffective assistance of counsel. We then apply it to Mr. McNeil's claims of error.

### A. An Error Is Prejudicial if It Undermines Our Confidence in the Outcome

¶27 Our method for evaluating whether an alleged error is prejudicial begins with *Strickland v. Washington*, 466 U.S. 668 (1984). The standard set forth in *Strickland* is that

> [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694; *see also State v. Lenkart*, 2011 UT 27, ¶ 38, 262 P.3d 1. This test does not require the State to prove that there are no conceivable facts under which the alleged error could have led to a different result. S*trickland*, 466 U.S. at 693 ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test . . . ."). Rather, the test requires a finding of prejudice only when our confidence in the verdict is undermined.

¶28 Defendant makes two arguments regarding our precedent's conception of prejudice. First, he argues that we should have two different prejudice tests, one for plain error claims and one for ineffective assistance of counsel claims. Second, he argues that the State bears the burden of proving there was no prejudice. We address each argument in turn.

¶29 Mr. McNeil's first argument—that our test for prejudice under plain error review should differ from the one articulated by *Strickland*—fails to acknowledge our contradictory precedent. We have held that the prejudice test is the same whether under the claim of ineffective assistance or plain error. *State v. Munguia*, 2011 UT 5, ¶ 13, 253 P.3d 1082; *State v. Dunn*, 850 P.2d 1201, 1225 (Utah 1993). Mr. McNeil does not even acknowledge this precedent, and we reject his argument.

¶30 Second, Mr. McNeil argues that the State bears the burden of proving that an error was not prejudicial. This argument is incorrect under both federal and state law. Under *Strickland*, the responsibility to prove that confidence in the verdict is undermined rests with the defendant. 466 U.S. at 693.

("Conflict of interest claims aside, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."). Our caselaw has similarly stated that a defendant who appeals from a conviction must show that there is a "reasonable probability" that, but for the error, the outcome would have been different. *State v. Moore*, 2012 UT 62, ¶ 17, 289 P.3d 487.

### B. Mr. McNeil's Prejudice Arguments Fail

¶31   As applied here, our prejudice analysis asks whether we remain confident that the verdict would be the same had the detective's testimony regarding the phone records been excluded. In pursuing this analysis, we note first that the State does not dispute the importance of the phone records to the verdict. The records were nearly the only evidence of the phone conversations between Mr. McNeil and Quentin on the morning of the assault, and the phone conversations themselves were powerful evidence that Mr. McNeil knew what Quentin was doing. Had the jurors not known about the content of the phone records, they would have been much more likely to doubt that Quentin was acting on Mr. McNeil's instructions or encouragement.

¶32   Thus, the question we must answer is whether, if the detective's testimony about the records had been excluded, the jurors would have been informed about the content of the records by some other means. Our answer to this question proceeds in three steps. First, we consider (and reject) Mr. McNeil's argument that we should assume for purposes of the prejudice analysis that the telephone records would not have been admitted at all. We next answer whether we are confident that evidence of the phone calls both existed and would have been admitted absent the detective's testimony. Finally, we examine whether we are confident that this alternative evidence would have matched the detective's testimony.

¶33   Mr. McNeil argues that we should assume for purposes of the prejudice analysis that the telephone records would not have been admitted at all. He asserts, in effect, that we cannot hypothesize about what the State might have done if the trial court had excluded the detective's testimony about the phone records.

¶34   In support of this argument, Mr. McNeil relies on *State v. Moore*, 2012 UT 62, 289 P.3d 487. In *Moore*, the defendant was accused of showing a pornographic video to a teenage boy and

sexually abusing him. *Id.* ¶¶ 1–5. It was unclear whether the defendant committed the crime in 2002 or 2003. Had the incident taken place in 2002, the defendant would have been guilty of both the crime of child sex abuse and the crime of showing pornography to a minor; had it taken place in 2003, he would only have been guilty of showing pornography to a minor. *Id.* ¶ 4. At trial, defense counsel never raised the issue of what year the crime took place. The defendant was convicted on both counts. *Id.* ¶ 8

¶35    On appeal, the court of appeals reversed both charges. *Id.* ¶ 10. On certiorari, the State argued that the pornography charge should not have been reversed because the date of the crime was irrelevant to whether the defendant was guilty of showing pornography to a minor. *Id.* ¶ 13. The State argued that, had the issue been raised, the prosecution could have simply changed the year stated in the complaint and the jury would have still convicted the defendant. *Id.*

¶36    We concluded in *Moore* that, if the State had been forced to amend the complaint, defense counsel's strategy could have been different. We explained that "[d]epending on which of many paths was chosen, there were several possible outcomes, some of which may have resulted in conviction, and some of which may have resulted in acquittal." *Id.* ¶ 19. We held that it would be inappropriate to uphold the conviction because the defendant had "shown that there is a reasonable probability that the result of the proceeding would have been different." *Id.* ¶ 21.

¶37    Here, Mr. McNeil argues that, just as we did not permit the State in *Moore* to assert on appeal that it could have amended its complaint, we cannot permit the State in this case to assert on appeal that the telephone records would have been admitted even if the detective's testimony would have been excluded. We disagree. The *Moore* court did not hold that appellate courts may never speculate about how the trial would have been different had the error not occurred; instead, it engaged in such speculation itself and concluded that, because amending the complaint would have opened up new strategies for the defense, it could not be confident that the trial would still have resulted in conviction. As nothing in our caselaw requires us to assume that the State would not have presented alternative evidence, we consider whether the phone records would likely have been admitted in some other form if the trial court had excluded the detective's testimony.

¶38    Mr. McNeil argues that it is not entirely clear whether the telephone records even existed. We disagree. Based on the

record before us, there is ample evidence that the records existed.[4] The record shows that during discovery, defense counsel requested copies of several pieces of evidence, including all the telephone records that the State had in its possession from Mr. McNeil's or Quentin's telephones the day of the attacks. The State's response to the discovery request enclosed "all telephone records in [the] possession of the state."[5] The State's response also indicated that it was not in possession of several other items requested by the defense. Since the State both claimed to send copies of the requested phone records and identified several items that it did not send, we can infer that the State had possession of the telephone records.

¶39    Having determined that we are confident the telephone records existed, we next consider whether the State would have provided a proper foundation for their admission under our rules of evidence.  Foundation for admitting telephone records can be laid in a number of ways. *See* UTAH R. EVID. 901, 902; *see also United States v. Yeley-Davis*, 632 F.3d 673, 679 (10th Cir. 2011) (discussing generally the admissibility of cell phone records). However, it appears that, aside from the detective's testimony, the State intended to rely on just one of these ways. The State's chosen method is outlined in Utah Rules of Evidence 901(b)(1), which allows for a foundation to be laid by the "[t]estimony of a [w]itness with [k]nowledge" that the records are what they say they are. The State prepared to provide this foundation by issuing a subpoena to cell phone service provider Cricket Communications and by stating prior to trial that it "may or may not" call a witness to testify from Cricket Communications.

¶40    Mr. McNeil argues that because the State never provided foundation for the phone records, we cannot infer that it would have provided a witness able to verify the actual phone records. We disagree because the State stated before trial that it had two separate paths for admitting the telephone records, and the first

---

[4] We acknowledge that at oral argument, Mr. McNeil's appellate counsel—while certainly well prepared—believed that the record did not contain any discovery requests regarding the phone records, and the State did not dispute that issue. The record contradicts this claim.

[5] As is customary, the trial court did not receive a copy of the records during discovery. *See* UTAH R. CIV. P. 34 (articulating no requirement to file all discovery with the court).

one it tried—the detective's testimony about the records—succeeded. It is obvious why the State did not try the second path of introducing the telephone records through the Cricket employee's testimony: it was unnecessary.

¶41   Mr. McNeil argues, however, that if a witness had been able to provide a foundation for the phone records, the State would have indicated as much during trial. He argues in particular that counsel should have indicated how he was going to provide foundation both when the hearsay objection was raised and when the untimely foundation objection was raised.

¶42   We disagree with Mr. McNeil's arguments. It seems implausible to us that counsel for the State would have indicated how he would provide foundation at the points Mr. McNeil mentions, for a simple reason: when the two potentially relevant arguments were made—hearsay and foundation—the trial court rejected the arguments without giving counsel for the State the opportunity to respond. The record shows that in order to explain how it would have laid a foundation, the State would have had to interrupt either defense counsel's argument or the judge's. We do not expect this of counsel, and we conclude that Mr. McNeil's assertion that we must reverse because the State did not articulate a method of laying foundation at trial is incorrect.

¶43   Even if the telephone records existed and a foundation could have been provided, we must reverse if the properly admitted evidence might have raised new arguments for the defense. *See Moore*, 2012 UT 62, ¶¶ 17–18. In this respect, Mr. McNeil argues that the records might have been contrary to the detective's testimony and thus, had the actual phone records been admitted, he might have had stronger arguments about their relevance or value as proof of guilt. Notably, he does not argue that the outcome would have been different if the phone records had been admitted but matched the detective's testimony about their contents.

¶44   We disagree with Mr. McNeil's contention that the records would have revealed different information. Since we have inferred above that the telephone records existed and that defense counsel had a copy of the records, it seems all but certain that defense counsel would have found a way to admit the telephone records if counsel's copy of them had contradicted the detective's testimony. This is sufficient for us to conclude that there is not a reasonable probability of the records differing from the testimony about them offered by the prosecution.

¶45   As we are confident that the phone records would have been admitted and would not have raised additional arguments for Mr. McNeil, we hold that Mr. McNeil was not prejudiced by any error at trial.

## CONCLUSION

¶46   We hold that defense counsel's withdrawal of the hearsay argument at trial was not invited error. But we also hold that the error Mr. McNeil alleges on appeal was not prejudicial. We therefore affirm.

---

ASSOCIATE CHIEF JUSTICE LEE, concurring:

¶47   I concur in the majority opinion as far as it goes. I write separately, however, to note my continuing objection to the standard set forth in the majority opinion in *State v. Moore*, 2012 UT 62, 289 P.3d 487, and to register my vote to overrule that decision. I applaud the court in this case for giving a limiting construction to the *Moore* standard for assessing prejudice on a claim for ineffective assistance of counsel. *See supra* ¶ 37. But in my view that is not enough. We should openly repudiate *Moore*. Unless and until we do so, it will stand as a potential source of confusion in this area.

¶48   The majority opinion in *Moore* appeared to erase the burden of proving prejudice—of establishing a substantial likelihood of a more favorable verdict in the absence of counsel's ineffectiveness—in cases involving "speculation" as to what "might have" happened absent counsel's ineffective assistance. *Moore*, 2012 UT 62 ¶ 21. Mr. Moore failed to present any proof or even argument as to how his case might have proceeded if his counsel had performed effectively. Yet the majority nonetheless concluded that he had "shown that there [was] a reasonable probability that the result of the proceeding would have been different." *Id.* And it appeared to base that conclusion on its concern that the likely outcome was a matter of "speculation," given that it was "unclear" how the defense might have proceeded in the alternative and "unclear how the jury" might have decided the matter. *Id.*

¶49   That standard cannot stand. As I noted in my dissent in *Moore*, binding federal precedent requires a claimant asserting ineffective assistance to carry the burden of proving prejudice—of establishing, in other words, a substantial probability of a different outcome absent counsel's missteps. *See id.* ¶ 29 (Lee, J.,

dissenting) (highlighting problems with the majority's standard and citing U.S. Supreme Court authority that is incompatible with it). That standard, moreover, necessarily requires an analysis of the hypothetical—of what "might have" happened if counsel had been effective, and of a "substantial" likelihood that the outcome would have been more favorable. *See Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (explaining that a *Strickland* claimant must establish a "substantial" "likelihood of a different result"). The prospect of "speculation" as to an alternative approach at trial is thus no basis for excusing a *Strickland* claimant from carrying his burden of proving prejudice; that, in fact, is the essence of the burden.[1]

¶50   The majority in this case, to its credit, rightly reaches this same conclusion. It says that "nothing in our caselaw" forecloses hypothetical analysis of what "would likely have" happened absent counsel's missteps. *Supra* ¶ 37. And it reinforces that the *Strickland* claimant's burden of proving prejudice must be centered on such questions. Importantly, the majority gives a

---

[1] *See Cullen v. Pinholster*, 563 U.S. 170, 200–02 (2011) (affirming the California Supreme Court's dismissal of an ineffective assistance of counsel petition, and finding that defendant had failed to carry his burden of proving prejudice based on analysis of the prosecution's likely response in the hypothetical event that counsel had fulfilled his duty); *Wong v. Belmontes*, 558 U.S. 15, 19–20 (2009) (per curiam) (reversing lower court decision vacating murder conviction on grounds of ineffective assistance at sentencing phase; emphasizing the defendant's burden of showing "a reasonable probability that . . . the result of the proceeding would have been different," while assessing that question on the basis of a hypothetical analysis of what the prosecution likely would have done if counsel had fulfilled his duty of presenting mitigating evidence (citation omitted)); *Darden v. Wainwright*, 477 U.S. 168, 186 (1986) (concluding that defendant had failed to carry his burden of establishing prejudice from counsel's failure to introduce sufficient mitigating evidence; noting that "[a]ny attempt to portray petitioner as a nonviolent man *would have opened the door for the State to rebut* with evidence of petitioner's prior convictions," and explaining that "[t]his evidence had not previously been admitted in evidence," but "trial counsel reasonably could have viewed it as particularly damaging" (emphasis added)).

limiting construction to *Moore.* It concludes that *Moore* does not "hold that appellate courts may never speculate about how the trial would have been different had the error not occurred," but "instead" requires consideration of the likely train of events—of the response by the prosecution and possible "new strategies for the defense"—in assessing whether the court is "confident that the trial would still have resulted in conviction." *Supra* ¶ 37.

¶51 This is an important step in the right direction. Until today, *Moore* could quite easily—and in fact most correctly—be read to foreclose hypothetical analysis of what "might have" happened absent counsel's missteps. That reading of *Moore* is legally untenable, however, and the court quite rightly rejects it.

¶52 Yet I would take the matter a step further. I would openly repudiate *Moore.* Unless and until we do so, *Moore* will stand as a confusing—and quite erroneous—gloss on the governing standard of proving prejudice under *Strickland.* I would do so here to avoid any possibility of more confusion in future cases.

———————