2011 UT App 292

**Kenneth E. WINWARD, Plaintiff and Appellant,**

v.

**Geraldine W. GOODLIFFE, Defendant and Appellee.**

No. 20090972–CA.

Court of Appeals of Utah.

Aug. 25, 2011.

---

Clark W. Sessions and Sarah L. Campbell, Salt Lake City, for Appellant.

Robert A. Echard, Ogden, for Appellee.

Before Judges McHUGH, ORME, and VOROS.

## MEMORANDUM DECISION

ORME, Judge:

¶ 1 Kenneth E. Winward (Winward) appeals a decision of the trial court finding that he received "advancements" from his parents Richard and Myrtle Winward (collectively, the Trustors; individually, Richard and Myrtle) and ordering him to pay his sister, Geral-

dine W. Goodliffe (Goodliffe), more than $500,000 in order to make distribution of trust funds equal. We affirm.

## TRUST TERMS

¶ 2 Pursuant to trust agreements and pour-over wills executed by Richard and Myrtle, all assets owned by the two were to be divided equally among the couple's surviving children—who turned out to be Winward and Goodliffe—at the time of the surviving spouse's death.[1] However, both trust agreements provide that

> [a]ssets received from the Trustor by any of the Trustor's children by means other than the express conditions of this instrument, such as through life insurance beneficiary arrangements, joint tenancy survivorship, or express advancements, shall be taken into account in making such equal division.

The trial court determined that Winward received $630,443 in "advancements" from the Trustors prior to their deaths, and to make distribution of trust assets equal, the court ordered Winward to pay Goodliffe more than $550,000.[2]

¶ 3 Winward argues that the trial court erred in finding that he received "advancements" from the Trustors. Specifically, Winward contends that because both trust agreements contained a provision requiring express advancements to be taken into ac-

---

1. Winward argued at trial and mentions on appeal that this case relates only to the trust of the surviving spouse, Myrtle. Thus, Winward argues that assets distributed by his father, Richard, are irrelevant to this case. Accordingly, he filed a motion in limine to, in part, restrict evidence received at trial to items in the Myrtle Winward Trust or specifically identified in the Complaint. Although the trial court did not expressly rule on this motion, it received evidence of assets that were not listed in Myrtle's trust or in the Complaint. ·Thus, the court implicitly rejected this portion of Winward's motion in limine. *See generally Yeargin v. State Tax Comm'n*, 2001 UT 11, ¶ 7, 20 P.3d 287 (noting that motion in limine was implicitly denied when tribunal received evidence the motion in limine sought to prohibit). Winward has not briefed this issue in detail. Therefore, we do not need to address this issue as we summarize the trial court's findings with respect to "advancements." *See Daniels v. Gamma W. Brachytherapy, LLC*, 2009 UT 66, ¶ 52, 221

P.3d 256 (refusing to address inadequately briefed issues).

2. At the time of Myrtle's death, her trust contained $223,441 in assets. To this figure, the trial court added the $630,443 it determined Winward had received from the Trustors as "advancements," giving the trust a value of $828,484 after subtracting $25,400 in administrative costs. The court then divided the value of the trust equally and concluded that both Winward and Goodliffe were entitled to $414,242 upon Myrtle's death. As Winward had already received $630,443 in "advancements," the court calculated that to make distribution equal, Winward owed Goodliffe $216,201. To this principal amount owed, the court added 10% interest, compounding annually from 1998 to 2008, *see infra* ¶ 13, and awarded Goodliffe attorney fees, bringing the total amount owed by Winward to $579,765.

count when making equal division of trust assets among the Trustors' surviving children and because the trial court used the term "advancements" in its findings, any assets Winward received from the Trustors prior to their deaths had to meet the statutory requirements for advancements. We disagree.

¶4 First, we note that the trust agreements identify a list of asset transfers that must be taken into account when making an equal distribution of trust assets. This list, however, is merely illustrative, as indicated by the list's introductory phrase "such as." Accordingly, the language of the trust agreements did not prevent the trial court from finding that an asset transfer that did not fall into one of the narrow categories outlined in the list should be taken into account when making an equitable distribution of assets. Indeed, the trust agreements and pour-over wills executed by the Trustors prescribe a plan for managing family assets upon the death of the Trustors, and a key part of this plan was the Trustors' desire to divide their assets equally by taking into account lifetime transfers of assets to their children. We see nothing in the language of the trusts that limits the types of asset transfers that must be accounted for when making equal distribution of trust property.

¶5 We conclude that under the terms of the trust agreements, the assets received did not have to come from trust funds, as Winward argues. Indeed, to fall within the equal-distribution provision of the trust agreements, all that was required was that an asset be "received from [a] Trustor by any of the Trustor's children by means other than the express conditions" of the trust agreements. Use of the term "trustor" did not necessarily connote that the equal-distribution provision applied only in the context of trust asset transfers. Rather, use of the term "trustor" can reasonably be interpreted merely as a shorthand reference to Richard or Myrtle. We see no other indication from the language of the trusts that only assets disbursed from trust funds were subject to

the equal-distribution provision.[3] Accordingly, we conclude that the language of the trust agreements can reasonably be interpreted as permitting the trial court, when dividing the trust property, to charge Winward for any assets that came directly from trust funds or individually from Richard or Myrtle, so long as he received such assets from the Trustors.

¶6 Second, although the trial court used the term "advancements" in its ruling, it is clear that the trial court was not using that word as a term of art as defined by statute. *See* Utah Code Ann. § 75-2-109(1)(a)–(b) (Supp.2010) (defining "advancement" for purposes of Utah's probate code). For one thing, as argued by Winward, property passed during the lifetime of an individual is only treated as an "advancement" if it is *"declared in a writing* by the decedent or acknowledged in writing by the [person receiving the property] *to be an advancement."* *Young v. Young,* 1999 UT 38, ¶24, 979 P.2d 338 (emphasis in original) (citation and internal quotation marks omitted). *See* Utah Code Ann. § 75-2-109(1)(a)–(b). And indeed, it appears that some of the documents admitted into evidence at trial may not satisfy the requirements for documenting advancements in the technical sense. Moreover, as is clear from the relevant statutory provisions as interpreted by *Young,* an advancement can only occur where the individual dies intestate. *See* 1999 UT 38, ¶26, 979 P.2d 338. *See also* Black's Law Dictionary 61 (9th ed. 2009) (defining "advancement" as "[a] payment or gift to an heir ... with the intention of reducing or extinguishing or diminishing the heir's claim to the estate under *intestacy* laws") (emphasis added). Here, both Trustors died with a comprehensive estate plan in place, and thus, intestacy—and by extension the legal doctrine of advancements—did not apply to their situation.

¶7 While Winward is correct that the legal doctrine of advancements was neither applicable nor fully satisfied in this case, it does not follow that reversal is in order. The trial court explained, in ruling on post-trial motions in which Winward argued that the legal

---

**3.** This interpretation of the trust agreements comports with the Trustors' apparent practice of

intermingling their individual and trust funds.

requirements for "advancements" were not met, that it had not used the term "advancements" in its technical, legal sense:

> [I]t didn't matter whether [assets received by Winward] were gifts or advancements or fell into any particular hole. Was there sufficient evidence to demonstrate that these things were given to one or the other of the children that they should be held accountable for[?] And it didn't really matter to me how they were characterized because they don't affect that he has to pay them back.... I didn't have to determine [that] because [the equal-distribution provision] talks about any asset that was distributed to [Winward], whether it was money, whether it was a home, whether it was stock, it didn't matter. Asset is a broad term.... I didn't spend a whole lot of time determining whether it was a gift or whether it was an advancement or whatever it was because the terms said any asset given to [Winward] should be included.

¶ 8 In sum, because the language of the trust agreements is broad enough to include *any* asset, whether it came from trust funds or from the Trustors individually, and because the trial court did not use the word "advancements" as a term of art, all that was required for an asset to be charged against Winward when distributing trust funds was that the asset be "received from [a] Trustor by [Winward] by means other than the express conditions" of the trust agreements. Consequently, any evidence of such an asset transfer did not have to conform to the statutory requirements for "advancements." Because Winward has not shown that he received any asset charged against him by express condition of the trust instrument, we conclude that the trial court did not err in concluding that Winward had to account for assets he received from the Trustors during their lifetimes.

¶ 9 Winward next contends that the trial court abused its discretion by admitting certain evidence offered by Goodliffe because, Winward argues, such evidence was not properly authenticated, lacked foundation, constituted "rank hearsay," and was irrelevant. To "preserve a contention of error in the admission of evidence for appeal, a defendant must raise a timely objection to the trial court in clear and specific terms." *State v. Schreuder*, 726 P.2d 1215, 1222 (Utah 1986).

¶ 10 Here, Winward argues that specific objections, two continuing objections, and a motion in limine adequately identified and preserved his evidentiary issues for appeal. We disagree. As Winward acknowledged during oral argument, these objections were based on relevance.[4] Winward argues, however, that his relevancy objections were sufficient to preserve all of his evidentiary claims. Specifically, Winward argues that if a document is not admissible for some purpose, e.g., because it lacks foundation, it is necessarily irrelevant. Winward acknowledges that this preservation argument requires an analytical "leap over the Grand Canyon." We are unwilling to make this leap. *See* Utah R. Evid. 103(a)(1) (explaining that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless ... a timely objection or motion to strike appears of record, stating the *specific ground* of objection, if the specific ground was not apparent from the context") (emphasis added); *State v. Brown*, 853 P.2d 851, 859 (Utah 1992) (explaining that a party must make a *clear and definite objection* at trial to preserve an evidentiary challenge for appeal).

¶ 11 Moreover, even viewing Winward's objections in context to determine their nature, as he would have us do, we conclude that Winward has preserved only a relevance claim. Winward's trial strategy was to establish that evidence of the money he received from the Trustors did not meet the

---

4. Although Winward also specifically objected to the materiality of certain documents, we analyze this objection in the same way we would an objection to relevance. *See* R. Collin Mangrum & Dee Benson, *Mangrum & Benson on Utah Evidence*, 1 Utah Practice 128 (2009–10 ed.) (explaining that under rule 401 of the Utah Rules of Civil Procedure "materiality" and "relevance" are analytically similar). *See also State v. Gray*, 717 P.2d 1313, 1316–17 (Utah 1986) (analyzing a materiality objection as a question of relevance under rule 401 of the Utah Rules of Evidence).

statutory requirements for advancements. In context then, Winward's objection to this evidence appears to be based on relevancy, i.e., if the evidence did not meet the requirements for advancements—the key issue under Winward's trial theory—then it was irrelevant to the case. Therefore, even when considering the nature of Winward's objections, we conclude that the only evidentiary issue Winward specifically preserved for appeal was the question of whether the admitted documents were relevant.[5] Given the broad interpretation applied to the trust agreements, we have no trouble concluding that documents purporting to show transfers from the Trustors to Winward prior to their deaths were relevant to whether Winward had received assets from the Trustors during their lifetimes. *See generally* Utah R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").[6]

## PREJUDGMENT INTEREST

¶ 12 Winward next claims that the trial court erred in awarding Goodliffe pre-

judgment interest. "Prejudgment interest is appropriate when 'the loss ha[s] been fixed as of a definite time and the amount of the loss can be calculated with mathematical accuracy in accordance with well-established rules of damages.'" *Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 2009 UT 7, ¶ 51, 210 P.3d 263 (alteration in original) (citation omitted).

¶ 13 Winward argues that prejudgment interest is not calculable with reasonable certainty because the evidence "fails to confirm that [Winward] received advancements" and because he was charged for assets that may not have come from trust funds. We have already rejected both of these arguments. Moreover, we conclude that the amount of the loss was fixed as of December 1998, the month and year of the last transfer from Myrtle to Winward. The court imposed prejudgment interest beginning that same month and year. Furthermore, although Winward objects to the evidence, documents admitted at trial contain identifiable facts and figures, enabling the trial court to calculate with mathematical certainty the amount Winward received from the Trustors. *See*

5. Winward also argues that his motion in limine preserved evidentiary issues for appeal. Other than his objection as to relevancy, we do not see any specific grounds on which Winward's motion in limine preserved evidentiary issues for appeal. *See State v. Schreuder*, 726 P.2d 1215, 1222 (Utah 1986).

6. Winward further contends that, as an evidentiary matter, the trial court erred by overlooking the Statute of Frauds when admitting documents showing the Trustors made payments to and on behalf of the Club Manhattan. We reject this argument. Winward did not raise the Statute of Frauds in his responsive pleadings or at any time during trial. Therefore, Winward did not preserve the issue for appeal either as an affirmative defense or as an evidentiary matter. *See* Utah R.App. P. 24(a)(5)(A) (requiring that briefs contain a "citation to the record showing that the issue was preserved in the trial court"); Utah R. Civ. P. 8(c) ("In pleading to a preceding pleading, a party shall set forth affirmatively ... [the] statute of frauds ... and any other matter constituting an ... affirmative defense."); *State v. Eldredge*, 773 P.2d 29, 34–35 (Utah) (explaining that a party must make a clear and definite objection at trial to preserve an evidentiary challenge for appeal), *cert. denied*, 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 29 (1989).

Moreover, we do not agree with Winward that the Statute of Frauds even applies in this case. The issue here is not whether the debts of the Club Manhattan can be enforced against Winward, thereby invoking the writing requirement of the Statute of Frauds, *see* Utah Code Ann. § 25–5–4(1)(b) (2007) (requiring a writing for "every promise to answer for the debt ... of another"); rather, the issue is whether money given by the Trustors to the club can be considered an "[a]sset[ ] received from the Trustor[s] by any of the Trustor[s'] children by means other than the express conditions" of the trust agreements. Here it is clear, despite Winward's insistence that the money was not given to him but to the club and that the club was a separate legal entity, that Winward considered the money given by the Trustors to maintain the club as loans that had to be repaid. Moreover, Winward had an interest in the club and personally benefitted from its sale. Accordingly, because we have concluded that under the trust instrument a broad interpretation of the term "asset" is permissible, the trial court did not err in finding that money given to the Club Manhattan was an asset Winward received from the Trustors, which had to be accounted for in making equal distribution.

*id.* See also *Saleh v. Farmers Ins. Exch.,* 2006 UT 20, ¶ 28, 133 P.3d 428 ("Prejudgment interest may be recovered where the damage is complete, the amount of the loss is fixed as of a particular time, and the loss is measurable by facts and figures."); *Orlob v. Wasatch Med. Mgmt.,* 2005 UT App 430, ¶ 35, 124 P.3d 269 ("[A] court may only award prejudgment interest if damages are calculable within a mathematical certainty.") (alteration in original) (citation and internal quotation marks omitted). Accordingly, the trial court did not err in awarding Goodliffe prejudgment interest.

### POST–TRIAL MOTIONS

¶ 14 Finally, Winward claims that the trial court erred in denying his motions for a new trial and other relief. Under the Utah Rules of Civil Procedure, a trial court has discretion to grant a party a new trial or other relief for errors of law, *see* Utah R. Civ. P. 59(a)(7), or for "any other reason" if it is "in the furtherance of justice," *id.* R. 60(b)(6).

¶ 15 In his memorandum accompanying his motions for a new trial and other relief, Winward argues that the trial court erred in finding that Winward had received "advancements" and that the trial court improperly received evidence of "advancements" at trial. Winward's current counsel argues that if the case had been tried as he argued it in post-trial motions and on appeal, especially with regard to unraised evidentiary objections, the outcome may have been different. But we must take the case as it was actually tried. As we have explained above, we see no error in the trial court's findings ultimately to the effect that Winward had received assets from the Trustors "by means other than the express conditions" of the trust instruments, nor do we see any error in the trial court's decision to admit evidence over Winward's objections, all of which were based on relevancy.

¶ 16 Winward also argues that because the trial court stated that it had never entered a judgment against Winward, a new trial should have been granted. We disagree. The trial court signed an order granting a judgment for Goodliffe against Winward. Although the trial court expressed concern about how it could enter such a judgment when the trust was not a party to the case, the court had previously explained that "[t]he monies [Winward] owed to the estate belong to [Goodliffe]," and the trial court's judgment reflected that determination. Moreover, despite the trial court's expressed doubt, it concluded during post-trial proceedings that it was "satisfied that its initial" ruling was correct. Accordingly, we conclude that the trial court did not abuse its discretion by denying Winward's motions for a new trial or other relief.

¶ 17 Affirmed.

¶ 18 WE CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge and J. FREDERIC VOROS JR., Judge.