**2013 UT App 134**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
ROLAND MCNEIL,
Defendant and Appellant.

Opinion
No. 20100695-CA
Filed May 23, 2013

Third District, West Jordan Department
The Honorable Mark S. Kouris
No. 081400390

E. Rich Hawkes, Christine Seaman, and
Peter A. Daines, Attorneys for Appellant
John E. Swallow and Marian Decker, Attorneys for
Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES STEPHEN L. ROTH and MICHELE M. CHRISTIANSEN
concurred.

VOROS, Judge:

¶1      Roland McNeil appeals his conviction for aggravated assault. McNeil contends that the trial court committed reversible error by improperly admitting three pieces of evidence: paraphrased portions of telephone records, a statement made by the victim's daughter, and testimony regarding an unavailable witness's prior inconsistent statements. We affirm.

## BACKGROUND[1]

¶2      McNeil and a coworker named Allen worked the graveyard shift. A friendship developed, and they began driving to work together. McNeil's adult son, Quentin, saw Allen pick McNeil up for work and talked to Allen on occasion. A rift between workplace teams ended the friendship after McNeil accused Allen of failing to support him in the conflict. On the drive home that day, McNeil was "very upset with [Allen]" and "scream[ed] at [Allen] all the way home, pounding [the] dash." Thereafter, McNeil and Allen stopped driving to work together and never spoke again.

¶3      McNeil told Quentin about the falling out, and Quentin began following Allen home from work. About a month later, Allen was returning to his residence when he noticed but did not recognize Quentin in the parking lot. As Allen opened his apartment door, Quentin approached and asked to use Allen's phone. He then shoved Allen into the apartment and shut the door. Quentin attacked Allen with a knife and with his hands. He broke Allen's nose and knocked out eight teeth. In the course of the attack, Quentin claimed that Allen's daughter and Allen's daughter's husband owed him a $10,000 drug debt and demanded the money. When Allen denied having any money in the apartment, Quentin stated, "I know you don't trust banks." Quentin then ransacked a jewelry box belonging to Allen's girlfriend.

¶4      Quentin knew more about Allen than his opinion of banks. He knew where Allen worked, what vehicle he owned, where Allen's daughter worked, and Allen's opinion of his daughter's husband. When Allen asked how Quentin knew so much, Quentin replied, "We've been following you. We know where you go eat.

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Brown*, 948 P.2d 337, 339 (Utah 1997).

We know where you do everything." Before leaving, Quentin dragged Allen to the shower, threw him in, and said, "Big daddy is going to let you live."

¶5     Allen was taken to a hospital and visited by detectives and family members. He had not recognized Quentin as McNeil's son and had no idea who his assailant was. Allen asked his daughter, whom he thought was "pure as snow," about the drug allegations. She replied, "Dad, if you don't know me by now, you never will."

¶6     Quentin was arrested and told investigators that McNeil had "sent [him] over there to beat [Allen] up." Quentin pleaded guilty to first degree aggravated burglary, first degree aggravated robbery, and second degree aggravated assault. After Quentin's pleas were accepted but before he was sentenced, he contacted the prosecutor in his case, Kimberly Crandall. Quentin and Crandall agreed, through intermediaries, that if Quentin told the truth in court about what had happened, Crandall would "write a letter to the Board of Pardons indicating that [Quentin] had told the whole truth of what happened and taken responsibility for his role in it."

¶7     But at McNeil's preliminary hearing, Quentin repudiated his statements about McNeil's involvement. He testified that he had lied to conform his statements to the prosecution's theory of his case. He believed this was necessary, he testified, to make the State "think I was taking responsibility" and thereby "get a better sentence for myself." Quentin then testified that McNeil had not told him to beat up Allen, that Quentin had confronted Allen to tell Allen to stay away from McNeil, and that "it turned ugly" when Allen pulled out a knife.

¶8     At McNeil's trial, Quentin refused to testify; accordingly, his preliminary hearing testimony was read into the record. Crandall then testified that she had not written the promised letter for Quentin because he had not told the whole truth at the preliminary hearing.

¶9     A detective's preliminary hearing testimony was also read into the trial record. At McNeil's preliminary hearing, this detective had testified without objection that, according to telephone records summarized in his police report, McNeil and Quentin had called each other several times immediately before and immediately after the crime. The telephone records and police report were not introduced into evidence at the preliminary hearing. Because the detective died before trial, the trial court allowed his preliminary hearing testimony to be read into the record at McNeil's trial. Defense counsel initially objected on hearsay grounds; the parties differ as to whether that objection was withdrawn.

¶10     McNeil was acquitted of aggravated burglary, aggravated robbery, and aggravated kidnapping. He was convicted of aggravated assault. *See* Utah Code Ann. § 76-5-103 (LexisNexis 2012). He timely appealed.


ISSUES AND STANDARDS OF REVIEW

¶11     On appeal, McNeil challenges the admission of three items of evidence, each under multiple theories and standards of review.

¶12     First, he contends that admission of the detective's preliminary hearing testimony about the telephone records violated the hearsay rule, the Confrontation Clause of the United States Constitution, and the best evidence rule. "When a party fails to preserve an issue for appeal, we will address the issue only if (1) the appellant establishes that the district court committed plain error, (2) exceptional circumstances exist, or (3) in some situations, if the appellant raises a claim of ineffective assistance of counsel in failing to preserve the issue." *State v. Low*, 2008 UT 58, ¶ 19, 192 P.3d 867 (citations and internal quotation marks omitted).

¶13     McNeil also asserts the hearsay and best evidence claims under the doctrines of plain error and ineffective assistance of counsel. Plain error review is inappropriate when the error was

invited by the appellant or resulted from the appellant's strategic decision. *State v. Bullock*, 791 P.2d 155, 159 (Utah 1989); *State v. Patterson*, 2013 UT App 11, ¶ 22, 294 P.3d 662. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Ott*, 2010 UT 1, ¶ 22, 247 P.3d 344 (citation and internal quotation marks omitted).

¶14    Second, McNeil contends that Allen's daughter's statement, "[I]f you don't know me by now, you never will," was admitted in violation of the hearsay rule. In reviewing hearsay rulings, we review legal questions for correctness, factual questions for clear error, and the final ruling on admissibility for abuse of discretion. *State v. Workman*, 2005 UT 66, ¶ 10, 122 P.3d 639; *State v. Jackson*, 2010 UT App 328, ¶ 9, 243 P.3d 902.

¶15    Third, McNeil contends that Crandall's statement that Quentin had not testified truthfully at McNeil's preliminary hearing was admitted in violation of the hearsay rule, the Confrontation Clause, and rule 608(a) of the Utah Rules of Evidence. He concedes that this claim of error was not preserved and thus argues plain error and ineffective assistance of counsel. To establish plain error on appeal, an appellant must show that "(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993). As noted above, "[a]n ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *Ott*, 2010 UT 1, ¶ 22 (citation and internal quotation marks omitted).

¶16    Finally, McNeil contends that, even if no single error requires reversal, the cumulative effect of these errors requires reversal. Under the cumulative error doctrine, we apply the "standard of review applicable to each underlying claim of error . . . ." *Radman v. Flanders Corp.*, 2007 UT App 351, ¶ 4, 172 P.3d 668. And "we will reverse only if the cumulative effect of the several errors undermines our confidence . . . that a fair trial was

had." *Dunn*, 850 P.2d at 1229 (omission original) (citations and internal quotation marks omitted).

ANALYSIS

I. The Telephone Records

¶17    McNeil first contends that the trial court erred by allowing portions of the detective's preliminary hearing testimony about the telephone records to be read into evidence at trial. McNeil asserts that admission of this testimony violated the hearsay rule, the Confrontation Clause, and the best evidence rule.

A. Hearsay

1. Preserved Error

¶18    McNeil first argues that this claim of error was preserved, so that admission of the challenged testimony constituted ordinary trial error. The State maintains that McNeil invited the error he complains of on appeal. McNeil counters that his counsel "repeatedly objected on hearsay . . . grounds." We conclude that McNeil invited any hearsay error.

¶19    The invited error doctrine ensures that "a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error." *State v. Winfield*, 2006 UT 4, ¶ 15, 128 P.3d 1171 (citations and internal quotation marks omitted). Counsel's stipulation that no error has been committed "represents a classic example of invited error." *State v. Moa*, 2012 UT 28, ¶ 31, 282 P.3d 985. This is so even when the party stipulates in a later hearing and not in the hearing where the alleged error occurs. *Id.* ¶ 32; s*ee also Braun v. Nevada Chems., Inc.*, 2010 UT App 188, ¶ 15, 236 P.3d 176. The doctrine also extends to counsel's failure to object in response to a specific question from the court. *See State v. Geukgeuzian*, 2004 UT 16, ¶ 10, 86 P.3d 742.

¶20 Here, the trial court discussed the detective's preliminary hearing testimony with counsel at length before admitting it. Much of this discussion focused on whether McNeil had had an opportunity to cross-examine the detective at the preliminary hearing. Defense counsel objected that "we're denied the opportunity of cross-examination" and argued that it was "a *Crawford* issue."[2] The trial court responded, "I don't understand what you're talking about. First of all, this isn't hearsay so *Crawford* doesn't play a part . . . . This was all done under oath, all done with the ability to cross examine, that meets all the standards we need to get it in, [doesn't it]? Am I right about that or not?" Defense counsel responded, "Even non-hearsay statements that are neutral in character may be excluded if under the circumstances they lead to an inference associated with a non-admissible element." Counsel continued, "This is hearsay at this point, this is hearsay. It's a prior recorded statement from a witness who is unavailable—" Then the trial court interrupted: "Hold the phone here. Hearsay says an out-of-court statement. This was in court. . . . Under oath, subject to cross-examination. This is not hearsay." At that point, defense counsel acquiesced: "*Okay, it's not hearsay*; it's a neutral statement." (Emphasis added.)

¶21 The court then summed up the foregoing discussion by stating that the parties were stipulating that the detective's preliminary hearing testimony concerning the telephone calls was not hearsay:

> This is not hearsay. It's a sworn statement under oath recorded, subject to cross examination. If the statement did contain hearsay, we would obviously

---

2. It is clear from the context that counsel was referring to *Crawford v. Washington*, 541 U.S. 36 (2004). There, the United States Supreme Court held that, under the Confrontation Clause, testimonial out-of-court statements are inadmissible against a criminal defendant unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *See id.* at 68–69.

> redact that. Both sides at this time are stipulating that in fact it doesn't. [Defense counsel] is objecting on different terms than hearsay terms; therefore we will say [the parties] are stipulating to the fact that it's not hearsay.

Defense counsel did not dispute this characterization of the discussion.

¶22    McNeil now contends that the court's statement constitutes a ruling on the merits of his hearsay objection, thus preserving the claim for appeal. We do not read it that way. As we read the exchange, the judge "gave [his] 'take' on the situation," *Braun*, 2010 UT App 188, ¶ 13, which was "This is not hearsay." Although defense counsel had earlier objected, at this point in the discussion he agreed that "it's not hearsay."

¶23    A claim is not preserved for appeal if a party initially objects but later, while "the wheel's still in spin,"[3] abandons the objection and stipulates to the court's intended action. *See Braun*, 2010 UT App 188, ¶ 13 (holding that, by retracting his stated concern upon recognition that "the tide is rolling against me on this issue," counsel invited any error). We conclude that to present an issue "to the trial court in such a way that the trial court has an opportunity to rule on that issue," *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (citation and internal quotation marks omitted), a party must communicate to the court that he or she *believes*—not merely *believed*—that the court is heading down the wrong track. Here, McNeil opened the discussion by asserting that the detective's preliminary hearing testimony was hearsay but, by the end of the discussion, led the court to believe that he was

---

3. Bob Dylan, The Times They Are A-Changin' (Columbia Records, 1964), *available at* http://www.bobdylan.com/us/songs/times-they-are-changin (last visited May 17, 2013).

"stipulating to the fact that it's not hearsay." Thus, any error was invited.[4]

### 2. Plain Error

¶24   McNeil also contends that the trial court committed plain error in admitting the detective's prior testimony. To establish plain error on appeal, an appellant must show that "(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993). However, invited error precludes appellate review of an issue. *Pratt v. Nelson*, 2007 UT 41, ¶ 17, 164 P.3d 366. Thus, where trial counsel affirmatively waives an objection, we will not conduct a plain error review of the underlying issue. *See State v. Bullock*, 791 P.2d 155, 158–59 (Utah 1989) (limiting application of the plain error rule and noting that "if a party through counsel has . . . led the trial court into error, we will then decline to save that party from the error"); *see also State v. Brooks*, 2012 UT App 34, ¶ 14, 271 P.3d 831 ("[R]eview under the plain error doctrine is not available when counsel invites the error by affirmatively representing to the district court that there is no objection to the proceedings."). Here, McNeil's stipulation that the detective's preliminary hearing testimony was not hearsay was an affirmative representation that he had no hearsay objection to the proceedings. Consequently, that stipulation precludes plain error review.

---

4. We note that McNeil raises a different hearsay objection to the detective's prior testimony on appeal than he did at trial. At trial, he suggested that it was hearsay because the detective was not available for cross-examination. On appeal, McNeil concedes that claim but argues that the testimony was inadmissible because the State had not sufficiently laid a business records exception foundation for admitting the testimony. However, because he stipulated that the testimony was not hearsay, McNeil invited *any* resulting hearsay error. *See Braun v. Nevada Chems., Inc.*, 2010 UT App 188, ¶ 15, 236 P.3d 176.

### 3. Ineffective Assistance of Counsel

¶25    McNeil further argues that if—as we have determined—his trial counsel failed to preserve his hearsay claim, that failure constitutes ineffective assistance of counsel. While invited error precludes a plain error claim, it does not preclude a claim for ineffective assistance of counsel. *State v. Sellers*, 2011 UT App 38, ¶ 13, 248 P.3d 70 (citing *State v. Geukgeuzian*, 2004 UT 16, ¶¶ 1, 13, 86 P.3d 742).

¶26    To show ineffective assistance of counsel, an appellant must show that (1) "counsel's performance was deficient in that it 'fell below an objective standard of reasonableness'" and (2) "counsel's performance was prejudicial in that 'there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Menzies v. Galetka*, 2006 UT 81, ¶ 87, 150 P.3d 480 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697. And because courts "indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689, any ambiguities or deficiencies in the appellate record "simply will be construed in favor of a finding that counsel performed effectively," *State v. Litherland*, 2000 UT 76, ¶ 17, 12 P.3d 92. Finally, "'[P]roof of ineffective assistance of counsel cannot be a speculative matter but must be a demonstrable reality.'" *Allen v. Friel*, 2008 UT 56, ¶ 21, 194 P.3d 903 (quoting *Fernandez v. Cook*, 870 P.2d 870, 877 (Utah 1993) (alteration in original).

¶27    Here, as explained above, the detective testified at the preliminary hearing that Quentin and McNeil exchanged a flurry of phone calls immediately before and immediately after the crime. This testimony was based on telephone records obtained from both Quentin's and McNeil's wireless carriers. The testimony was read into evidence at trial. McNeil now claims his trial counsel was ineffective for not objecting to this testimony on hearsay grounds.

¶28 The State asserts that McNeil cannot show prejudice. If defense counsel had successfully objected at trial, the State argues, the prosecutor would simply have introduced the underlying telephone records. Indeed, in anticipation of this very eventuality, the prosecutor mentioned during jury selection that he "may or may not call . . . a representative from Cricket Communications," the phone service provider. And defense counsel later confirmed that he "had been told that there was going to be a Cricket [Communications] witness to lay foundation."

¶29 McNeil responds that, "taken to its next logical step, the State's argument would completely dispose of the State's burden of proof. If the State's argument were adopted, the State could always rectify any evidentiary proof failures at trial by[] simply asserting, on appeal, that they 'could have' provided the proof." He adds that the record on appeal is insufficient to show that he "suffered no prejudice by the phone records testimony because the State could have provided the same evidence in other ways."

¶30 Arguing that the appellate record is insufficient to show that a defendant suffered no prejudice misplaces the burden on appeal. Defendant bears the burden of establishing prejudice as a "demonstrable reality." *Allen*, 2008 UT 56, ¶ 21. Nevertheless, McNeil's argument has force. And in another case, showing that an objection to certain testimony was well-founded might raise a reasonable probability that the result of the proceeding would have differed absent counsel's unprofessional errors.

¶31 But here, the State is not, as McNeil claims, "simply asserting, on appeal, that they 'could have' provided the proof." Likely as a result of trial counsel's withdrawal of his hearsay objection, the telephone records are not before us. But the most reasonable inference from the record that *is* before us is that those records were available at trial, that they supported the detective's preliminary hearing testimony, and that the records custodian that the court and defense counsel already knew about was ready to authenticate them in the event of an objection. Indeed, defense

counsel's knowledge that the records custodian was at the ready might explain his willingness to relinquish his hearsay objection.

¶32    In sum, McNeil has not established that counsel's hearsay objection would have prevented the jury from learning that Quentin was in telephone contact with McNeil immediately before and immediately after the crime. He has not, in a word, shown prejudice. We deny his ineffective assistance of counsel claim on this basis.

B. Confrontation Clause

¶33    McNeil also contends that his Confrontation Clause rights were violated when the trial court admitted the detective's prior testimony into evidence. Specifically, he asserts that "the State introduced hearsay against [him] without showing it was not testimonial or affording him an opportunity to cross-examine the declarant, which violates the Confrontation Clause."

¶34    The Confrontation Clause provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. Accordingly, testimonial hearsay is admissible in a criminal case only when the declarant is unavailable and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). "To rank as 'testimonial,' a statement must have a 'primary purpose' of 'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution.'" *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2714 n.6 (2011) (alterations in original) (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)).

¶35    Here, McNeil complains that he "was never given an opportunity to cross-examine the phone company's records custodian to determine if [the detective's] summary of the records was accurate, whether they were kept in the regular course of business, or whether they were prepared for investigation or prosecution of Mr. McNeil." In sum, he argues, "[W]hen the trial

court overruled defense counsel's objection that the admission of the hearsay phone records violated Mr. McNeil's rights under the Confrontation Clause, the ruling was not based on adequate evidence because there was no foundation to suggest that the phone records were not testimonial." The State responds that, as with his hearsay claim, McNeil invited any Confrontation Clause error.

¶36   We conclude that any error was invited. First, as explained above, the trial court did not "overrule" defense counsel's objection; it discussed the objection, after which defense counsel agreed that the court's view of the matter was correct. Second, we do not agree that defense counsel "was never given an opportunity to cross-examine the phone company's records custodian" to determine whether the records fit within the business records exception. Defense counsel never sought this opportunity at trial. Rather, he focused on his ability to cross-examine the detective: "We don't have the opportunity of asking [the detective] if he could verify the conversations actually took place or if they were simply playing phone tag the entire time or if the phone was left on . . . ." When asked by the court if he did not have this opportunity at the preliminary hearing, defense counsel acknowledged, "Yes sir, we did."[5]

¶37   This exchange clearly left the court wondering what the basis of McNeil's *Crawford* objection was. As far as the trial court understood, the defense objection went to the detective's testimony. That testimony was obviously testimonial. But it was also subject to cross-examination, and the detective, having died in the interim, was unavailable. Thus, the testimony on its face

---

5. Because defense counsel never focused, as appellate counsel now does, on the opportunity to cross-examine the records custodian, even assuming that defense counsel never withdrew his objection, it was not "specific enough to give the trial court notice of the very error of which counsel complains." *State v. Bryant*, 965 P.2d 539, 546 (Utah Ct. App. 1998).

satisfied *Crawford*'s criteria for admissibility. *See Crawford*, 541 U.S. at 68. The record demonstrates that, in the court's mind, this concluded the matter, especially when defense counsel agreed that "it's not hearsay." But just to make sure, the court then restated its conclusion that there was no hearsay or *Crawford* issue, and defense counsel acquiesced in that conclusion.

¶38 In sum, McNeil bundled his *Crawford* objection with his hearsay objection, agreed that the detective's preliminary hearing testimony was "not hearsay," and acquiesced in the trial court's characterization of his position as a stipulation that the detective's preliminary hearing testimony was not hearsay. As a result, any Confrontation Clause error was invited. *See State v. Bullock*, 791 P.2d 155, 158 (Utah 1989).[6]

C. Best Evidence

¶39 McNeil further argues that by allowing the prosecution to read the detective's preliminary hearing testimony into evidence at trial, the trial court violated the best evidence rule. McNeil asserts

---

6. We note that phone records are frequently held to be non-testimonial. *See, e.g., United States v. Yeley-Davis*, 632 F.3d 673, 679 (10th Cir. 2011); *United States v. Green*, 396 F. App'x 573, 574–75 (11th Cir. 2010); *People v. Turner*, B235057, 2013 WL 414222, *7 (Cal. Ct. App. Feb. 4, 2013); *People v. Ferguson*, No. 307666, 2013 WL 1149540, at *13 (Mich. Ct. App. Mar. 19, 2013) (per curiam); *State v. Brooks*, 56 A.3d 1245, 1254 (N.H. 2012). *But see State v. Hood*, 2012-Ohio-6208, ¶¶ 33–39, 984 N.E.2d 1057 (noting that, while cell phone records "are generally business records that are not prepared for litigation and are thus not testimonial," under the circumstances there was "no assurance that the records at issue are business records"). McNeil points to nothing in the record before us, nor are we aware of any evidence, suggesting that the phone records that the Cricket Communications representative was apparently prepared to authenticate were created for the purpose of investigation or prosecution of a crime.

that "if the State wants to use the contents of phone records as evidence against a defendant, the State needs to use the records themselves." Rule 1002 of the Utah Rules of Evidence provides that "[a]n original writing, recording, or photograph is required in order to prove its content, except as otherwise provided in these rules or by other rules adopted by the [Utah Supreme Court] or by statute." Utah R. Evid. 1002; *see also id.* R.1003 to R.1007 (exceptions). McNeil asserts that we may review for preserved error, plain error, and ineffective assistance of counsel.

¶40    "Rule 103(a) of the Utah Rules of Evidence requires a clear and definite objection at trial to preserve an evidentiary error for appeal." *State v. Brown*, 853 P.2d 851, 859 (Utah 1992); *see also Winward v. Goodliffe*, 2011 UT App 292, ¶¶ 10–11, 263 P.3d 493 (holding that a relevance objection did not preserve authentication, foundation, and hearsay claims). McNeil did not raise a best evidence objection at trial.

¶41    Even if he had, he cannot show prejudice. Trial error requires reversal "only if a review of the record persuades the [appellate] court that without the error there was 'a reasonable likelihood of a more favorable result for the defendant.'" *State v. Knight*, 734 P.2d 913, 919 (Utah 1987) (quoting *State v. Fontana*, 680 P.2d 1042, 1048 (Utah 1984)); Utah R. Evid. 103(a); Utah R. Crim. P. 30(a). "A reasonable likelihood of a more favorable outcome exists when the appellate court's confidence in the verdict is undermined." *State v. Whittle*, 1999 UT 96, ¶ 17, 989 P.2d 52. As explained above, McNeil has not established prejudice under this standard.

¶42    McNeil's inability to demonstrate prejudice also dooms his plain error and ineffective assistance of counsel claims. These theories share a "common standard" of prejudice. *State v. Litherland*, 2000 UT 76, ¶ 31 n.14, 12 P.3d 92; *State v. Verde*, 770 P.2d 116, 124 n.15 (Utah 1989). Under either theory, a defendant must demonstrate that, absent the error or deficient performance, "there is a reasonable probability of a more favorable result." *State v. King*,

2010 UT App 396, ¶ 20, 248 P.3d 984 (citation and internal quotation marks omitted); *see also Strickland v. Washington*, 466 U.S. 668, 694. This common standard serves as an "analytical shortcut" to allow reviewing courts to forego analyzing the other prongs of the ineffective assistance and plain error standards where a defendant cannot demonstrate prejudice in any event. *Litherland*, 2000 UT 76, ¶ 31 n.14. We take that course here. As explained above, McNeil has not demonstrated a reasonable probability of a more favorable result had his counsel objected at trial. His plain error and ineffective assistance of counsel claims thus cannot succeed.

## II. Daughter's Hearsay Statement

¶43   McNeil contends that the trial court erred by allowing Allen to repeat a statement his daughter made to him while visiting him in the hospital. The prosecutor asked Allen if, while he was in the hospital recovering from the assault, he had any idea who his assailant was. Allen responded with a story about his daughter:

> Q:   At this point when you're in the hospital, do you have any idea who this person was that had done this to you?
>
> A:   No, I didn't have no idea and I didn't start thinking on that direction. I thought about what he said about my daughter and my son being into him for $10,000 in drugs and all that and I'm thinking, my daughter is pure as snow and she walked in and I asked her what are you into *and she said, Dad, if you don't know me by now, you never will.*
>
> [Defense counsel 1]: Objection, Your Honor, this is nonresponsive.
>
> [Defense counsel 2]: And hearsay.

(Emphasis added.) The prosecutor offered to ask a different question, but the trial court overruled the objection, stating that Allen was already "done answering it." McNeil now argues that the trial court committed reversible error.

¶44    Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. Utah R. Evid. 801(c). "The term hearsay is applied to testimony offered to prove facts of which the witness has no personal knowledge, but which have been told to [the witness] by others." *State v. Sibert*, 310 P.2d 388, 390 (Utah 1957). Hearsay is generally inadmissible because the witness "is acting as a conduit to relay" the personal knowledge or observations of others. *Id.* at 390.

¶45    The State makes three responses to McNeil's hearsay claim. First, it asserts that because defense counsel's objections were made after Allen had made the statement, the objections were not timely and the claim is thus unpreserved. We disagree.

¶46    An objection is timely if it gives the court "an opportunity to address a claimed error and, if appropriate, correct it." *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. An objection made immediately after improper testimony is uttered will ordinarily satisfy this standard. For example, in *State v. Harmon*, 956 P.2d 262 (Utah 1998), counsel objected immediately after the witness had given the challenged testimony. Our supreme court stated that "the improper testimony was never admitted as evidence. Rather, the [trial] court ruled that the [witness's] comment violated Utah law, ordered the remark stricken, and gave a curative instruction to the jury." *Id.* at 271. Similarly here, once defense counsel objected, the trial court could have ruled that the testimony violated Utah law, ordered the remark stricken, and given a curative instruction if appropriate. Thus, McNeil's objection was timely and the claim of error is preserved.

¶47    Second, the State asserts that the daughter's statement "was not hearsay, because it was not offered for the truth of the matter

asserted." *See* Utah R. Evid. 801(c). Instead, the State claims, her statement "was offered merely to show [Allen's] state of mind as to why he suspected [McNeil]." Again, we disagree.

¶48 Where "'an out-of-court statement is offered simply to prove it was made, without regard to whether it is true, such testimony is not proscribed by the hearsay rule.'" *State v. Olsen*, 860 P.2d 332, 335 (Utah 1993) (quoting *State v. Sorensen*, 617 P.2d 333, 337 (Utah 1980)). "Testimony of this nature does not violate the hearsay rule [because] the witness is asserting under oath a fact he personally knows, that is, that the statement was made, and he is subject to cross-examination concerning such fact." *Sibert*, 310 P.2d at 391. Often statements of this type merely reveal people's motives for later actions. *See, e.g., Barton v. Barton*, 2001 UT App 199, ¶ 16, 29 P.3d 13 (out-of-court statement offered "as proof of a good faith reason for not attending [a] hearing"); *In re G.Y.*, 962 P.2d 78, 85 (Utah Ct. App. 1998) (out-of-court statement offered because it illuminated a caseworker's "treatment plan evaluations, recommendations, and subsequent actions"); *State v. Perez*, 924 P.2d 1, 3 (Utah Ct. App. 1996) (in offering an out-of-court statement, defendant "was merely offering an explanation for his actions"). Here, the State identifies no subsequent actions that Allen took in response to hearing his daughter's statement.

¶49 Perhaps more importantly, the prosecutor used the statement at trial for the truth of the matter asserted. In closing, he relied on the daughter's out-of-court statement to debunk the defense theory that the assault was drug-related:

> It's this idea of a drug connection . . . . [Allen] said that when Quentin, the defendant's son, went into his house he said, Well, your daughter and her boyfriend are . . . into me for some pretty debt on the drugs and all I want is cash. . . . In fact, you heard [Allen] say that he was in the hospital, his daughter came in and (inaudible) something to the effect that he asked her what are you into and she said, Dad, if

you don't know me by now, or something to that effect. [Allen] testified that he has never done drugs, testified that his daughter . . . to the best of his knowledge had never done drugs and his now son-in-law . . . had never done drugs.

Because the relevance of the daughter's statement depended on its truth, and the prosecutor in fact used the statement for its truth, we agree with McNeil that the statement was hearsay. As the State does not contend that any hearsay exception applies, admission of the statement was error.

¶50    The State's third counter-argument is that McNeil has not shown harm. It maintains that the daughter's statement "was ambiguous in that she did not directly deny being involved in drugs" and that, because the "ambiguous response was just as consistent with Defendant's trial theory as it was the State's, Defendant fails to show any unfair prejudice." McNeil asserts that the statement was prejudicial because it "was inconsistent with a defense theory of the case." On this point, we agree with the State.

¶51    "We only reverse a verdict where the lower court committed harmful error." *State v. Matsamas*, 808 P.2d 1048, 1053 (Utah 1991). "An error is harmful if there is a reasonable likelihood that the error affected the outcome in the trial court." *Id.* (citation and internal quotation marks omitted).

¶52    Whether an error is harmful in a particular case "depends upon a host of factors, all readily accessible to reviewing courts." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). These include "'the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.'" *State v. Hackford*, 737 P.2d 200, 205 (Utah 1987) (quoting *Van Arsdall*, 475 U.S. at 684). The reviewing court may also

consider the degree of emphasis the prosecution placed on the evidence in presenting its case. *See State v. Valdez*, 748 P.2d 1050, 1055 (Utah 1987) (concluding that "any arguable error was harmless" in part due to "the lack of emphasis" placed on the evidence by the State).

¶53 Here, the hearsay statement was not central to the State's case. The daughter's out-of-court statement was, at most, weak evidence of guilt because it was ambiguous. When a daughter is asked point blank by her father if she is involved with drugs, the response, "[I]f you don't know me by now, you never will," could be read as an implied denial coupled with a gentle daughterly reproof for the father's having asked the question. But it could also be read as an evasion in a circumstance calling for a categorical denial and thus by implication almost an admission. As noted above, the prosecutor adopted the former reading in closing. But defense counsel adopted the latter. He stated flatly that there was "no evidence" that the daughter and her husband did not do drugs; noted that neither testified, "No, we don't do drugs"; and observed that Allen's daughter and her husband were conspicuously absent from trial. Thus, while the testimony did weigh against McNeil at trial, its weight was slight.

¶54 Also, the hearsay statement was cumulative of other, properly admitted—though similarly inconclusive—testimony. For example, Allen testified that he had no knowledge that his daughter, a nurse, was "doing any drugs."

¶55 Given the statement's ambiguity, the prosecutor did not emphasize it. Although his closing arguments consumed over twenty-five transcript pages, he referred to the hearsay statement only once: "In fact, you heard [Allen] say that he was in the hospital, his daughter came in and [said] something to the effect that he asked her what are you into and she said, Dad, if you don't know me by now, or something to that effect."

¶56    Finally, the remaining evidence against McNeil, though circumstantial, strongly tied him to the assault. The jury heard evidence that McNeil was angry at Allen over issues at work; that Quentin told investigators that McNeil told him to attack Allen; that during the attack Quentin stated that "we" know where you do everything and backed up this taunt with a wealth of information about Allen's personal life; that this included tidbits that Allen had shared with McNeil, such as that he did not trust banks; that Quentin and McNeil spoke on the phone multiple times immediately before and after the assault; that McNeil lied to police about these conversations until the detective mentioned the phone records; that Allen had no idea who Quentin was before the attack; and that McNeil showed a coworker a knife similar to that used in the assault.[7]

¶57    Accordingly, in reviewing the factors relevant to a determination of prejudice, we conclude that, while admitting the hearsay statement was error, McNeil has not shown a "reasonable likelihood that the error affected the outcome in the trial court." *See State v. Matsamas*, 808 P.2d 1048, 1053 (Utah 1991) (citation and internal quotation marks omitted).

### III. Prosecutor's Statement

¶58    McNeil contends that certain testimony of the prosecutor in Quentin's case was admitted in violation of the hearsay rule, the Confrontation Clause, and rule 608(a) of the Utah Rules of Evidence.

¶59    Quentin originally told police that he had attacked Allen at McNeil's behest. But when called as a witness at McNeil's preliminary hearing, Quentin told a different story. He testified that he had lied to investigators to get a better sentence and that he had actually acted alone. He testified that he had heard threats

---

7. This summary does not include the testimony challenged in the next point.

against his father, McNeil, on a tape and that he went to Allen's home to talk to him "but it turned ugly" and "I ended up hurting him." Pursuant to rule 804 of the Utah Rules of Evidence, the trial court allowed these portions of Quentin's preliminary hearing testimony to be read to the jury at trial.

¶60    Crandall, the prosecutor in Quentin's case, also testified. She testified to an agreement that if Quentin would testify truthfully, she would write a letter to the Board of Pardons to that effect. But, she added, because he did not, she did not write the letter:

> A:    Quentin came forward and said he wanted to say what had happened, he wanted to tell the truth. I said that if he did do that in court and he said what really happened of how the whole incident occurred, if he told the complete truth then I would write a letter to the Board of Pardons indicating that he had told the whole truth of what happened and taken responsibility for his role in it.
>
> Q:    And did you ever write that letter?
>
> A:    I did not because he did not do that.

McNeil did not object to this testimony at trial.

¶61    On appeal, McNeil asserts that this testimony was barred on three grounds. First, he contends that it violated the hearsay rule, because "Quentin was not available for cross-examination regarding this statement and thus it was not admissible under rule 801(d)(1)(A)." *See* Utah R. Evid. 801(d)(1)(A). Second, he contends that the testimony was barred by the Confrontation Clause, because "when the State seeks to introduce a *testimonial* statement against a defendant and the witness is unavailable, there must be a prior opportunity for cross-examination about that statement." (Citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)). Finally, McNeil contends that this testimony was admitted in violation of

rule 608 of the Utah Rules of Evidence, which "permits testimony concerning a witness's general character or reputation for truthfulness or untruthfulness but prohibits any testimony as to a witness's truthfulness on a particular occasion." *State v. Rimmasch*, 775 P.2d 388, 391 (Utah 1989).

¶62 McNeil properly acknowledges that these claims of error are not preserved. He therefore maintains that the trial court committed plain error in admitting the testimony and that his trial counsel rendered ineffective assistance of counsel in not objecting to it.

¶63 As noted above, plain error claims and ineffective assistance of counsel claims share a "common standard" of prejudice. *State v. Litherland*, 2000 UT 76, ¶ 31 n.14, 12 P.3d 92; *State v. Verde*, 770 P.2d 116, 124 n.15 (Utah 1989). Under either theory, a defendant must demonstrate that, absent the error or deficient performance, "there is a reasonable probability of a more favorable result." *State v. King*, 2010 UT App 396, ¶ 20, 248 P.3d 984 (citation and internal quotation marks omitted); *see also Strickland v. Washington*, 466 U.S. 668, 694 (1984).

¶64 Again, factors relevant to a determination of prejudice include the relative importance of the testimony, whether the testimony was cumulative, the presence or absence of corroborating or contradicting evidence, the extent of cross-examination, the degree of emphasis placed on the evidence by the prosecution, and the overall strength of the prosecution's case. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *State v. Valdez*, 748 P.2d 1050, 1055 (Utah 1987); *State v. Hackford*, 737 P.2d 200, 205 (Utah 1987).

¶65 McNeil asserts that Crandall's testimony was prejudicial "because it bolstered the credibility of Quentin's statement implicating Mr. McNeil and attacked the statement that exonerated him," and thus, in a case that hinged on credibility, the prosecutor's testimony—"with all the weight and respectability of a State

prosecutor—destroyed the credibility of Quentin's preliminary hearing exoneration of Mr. McNeil." McNeil maintains, in effect, that the testimony was central to the prosecution's case because it addressed the linchpin of their case—whether Quentin acted at the behest of McNeil.

¶66    However, the testimony was also cumulative. The jury knew that Quentin had originally implicated McNeil in his statement to investigators, then recanted that statement in the preliminary hearing. These are the crucial facts. That a prosecutor did not write a letter to the Board of Pardons commending Quentin for having told the truth when he recanted his earlier statement to police adds little. This is not a case where the prosecutor's statements might "convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant." *United States v. Young*, 470 U.S. 1, 18 (1985) (referring to the prosecutor's vouching for a witness in closing argument). Here, the jury was well aware of the evidence—including Quentin's own statement to investigators and the telephone records showing his communications with McNeil before and after the attack—supporting the prosecutor's decision.

¶67    Neither trial counsel emphasized Crandall's testimony in closing. Defense counsel never mentioned the letter at all. The prosecutor touched on the fact that Crandall had agreed to write a letter but never mentioned the point at issue here—that she refused to write it:

> You heard . . . his testimony at the . . . preliminary hearing for his father and he admitted that he told [two investigators] and he said, I told them pretty much the same thing, that I did it, there was some big issue with . . . my dad and my dad told me to do it and all this.
>
> You also heard evidence from Kim Crandall . . . about whether or not any deals or

> promises had been made to him and the response
> was essentially, No there wasn't. I think Kim
> Crandall had agreed that she would write a letter to
> the Board of Pardons.

The prosecutor's coyness concerning the unsent letter is understandable; it is not obvious which direction it cuts. As the State argues on appeal, the prosecutor's refusal to commend Quentin for his recantation could be seen as having "added credibility to Quentin's recantation . . . where it caused detriment—not a benefit—to Quentin."

¶68     Finally, as summarized above, the remaining evidence against McNeil, though circumstantial, strongly tied him to the assault.

¶69     In sum, assuming without deciding that the trial court obviously erred in not stepping in to exclude the testimony and that any objectively reasonable counsel would have successfully objected to the testimony, McNeil has nevertheless failed to show a "reasonable likelihood that the error affected the outcome in the trial court." *See State v. Matsamas*, 808 P.2d 1048, 1053 (Utah 1991) (citation and internal quotation marks omitted).

### IV. Cumulative Error

¶70     McNeil asks us to reverse his conviction under the cumulative error doctrine. "Under the cumulative error doctrine, we will reverse only if 'the cumulative effect of the several errors undermines our confidence . . . that a fair trial was had.'" *State v. Dunn*, 850 P.2d 1201, 1229 (Utah 1993) (omission in original) (quoting *Whitehead v. American Motors Sales Corp.*, 801 P.2d 920, 928 (Utah 1990)). "[W]e consider all the identified errors, as well as any errors we assume may have occurred." *Id.*

¶71     Here, we have discussed numerous claims of error presented by McNeil. We have determined that the admission of

one hearsay statement was error, and we have assumed without deciding that admission of another was error. For the same reasons that neither statement individually was likely to have affected the outcome of the trial, we conclude that the admission of the statements in combination was similarly not likely to have affected the outcome of the trial. *See id.* (rejecting a cumulative error claim despite having assumed arguendo that several errors occurred at trial).

CONCLUSION

¶72 With respect to the admission at trial of the preliminary hearing testimony concerning telephone calls, we conclude that McNeil stipulated that the testimony was not hearsay and thus invited any hearsay error. And because McNeil has not shown that the admission of this testimony prejudiced the outcome of the trial, his remaining claims predicated on the admission of this testimony also fail. With respect to Allen's hearsay recitation of his daughter's statement, we conclude that its admission, though erroneous, was harmless. With respect to the testimony from Crandall explaining why she did not write Quentin a letter of commendation, we conclude that, even assuming admission of this testimony was erroneous, the error was harmless. Finally, even cumulating the actual and assumed errors, our confidence in the jury's verdict is not undermined. Accordingly, the judgment of the trial court is affirmed.

———————